Charles Joseph KING, Jr., Plaintiff-Appellant,

v.

UNITED STATES of America et al., Defendants-Appellees.

No. 73–1387.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 25, 1974.

Decided March 13, 1974.

Patrick L. Baude, Indiana University School of Law, Bloomington, Ind., for plaintiff-appellant; Charles Joseph King, Jr., pro se.

Stanley B. Miller, U. S. Atty., Thomas L. Bose, Asst. U. S. Atty., Indianapolis, Ind., for defendants-appellees.

Before PELL, STEVENS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal seeks the answer to the single narrow question: Does due proc-

ess or statute require that reasons be given for the refusal of the United States Board of Parole to grant parole?

### I

The plaintiff, Charles Joseph King, Jr., filed an action on July 21, 1972 for declaratory judgment in the District Court for the District of Columbia against the United States, the Attorney General, the director of the Bureau of Prisons and the chairman of the United States Board of Parole. The District of Columbia court granted the defendants' motion to transfer the action to the Southern District of Indiana inasmuch as plaintiff was confined as a prisoner in the United States Penitentiary at Terre Haute, Indiana. 28 U.S.C. § 1404(a); Young v. United States Bureau of Prisons, 125 U.S.App.D.C. 105, 367 F.2d 331 (1966).

In his *pro se* complaint, plaintiff alleged that he was sentenced to 15 years in the custody of the Attorney General on November 7, 1969; that he "appeared before the U.S. Board of Parole and was sent off for 2 years without cause or reason"; and prayed that the court "issue a show cause order to the U.S. Board of Parole to show why at this time" he cannot be released on parole and otherwise to declare his rights. He added:

"One cannot improve or correct the reason for denial if he is not aware of that reason. What sureness is there, that one year or one month from this time he will be any different. Why he was denied, there is all the cause in the world for him to become bitter when one is being denied justice."

The defendants filed a motion to dismiss for failure to state a claim upon which relief could be granted.[1] The district court dismissed the complaint, noting that the plaintiff "seeks a mandate from this Court ordering the respondents to show cause why petitioner was denied a parole" and concluding that "this Court will not review the decision of the Parole Board, nor will it repass on the credibility of reports and information received by the Board in making its determination."

In his complaint and in his response to the defendants' motion to dismiss in the district court, the plaintiff stressed that his claim was based on failure of the Parole Board to give reasons for its denial of his application for parole. He cited the due process clause of the Fifth Amendment and the Administrative Procedure Act as giving him a right to have reasons expressed. A reasonably creditable but discursive brief was filed as plaintiff's *pro se* brief in this court.

We subsequently granted leave to Professor Patrick L. Baude of Indiana University Law School as *amicus curiae* to file a brief and present oral argument on behalf of the plaintiff. Professor Baude has argued that (1) the Fifth Amendment forbids denial of parole without a stated reason and (2) the Administrative Procedure Act requires the Parole Board to state its reasons for denying parole.

### II

The district court relied upon Brest v. Ciccone, 371 F.2d 981, 983 (8th Cir. 1967) where the conclusion was that "[t]he courts have no jurisdiction and no power to . . . review or control the discretion of the Board of Parole in the exercise of its duties under § 4203."[2]

---

1. One of defendants' grounds for dismissal was that under 18 U.S.C. § 4202 plaintiff would not become eligible for parole until he had served one-third, or five years, of his 15 year sentence. In plaintiff's response, however, he stated that he had been sentenced under § 4208 and was eligible for parole prior to serving one-third of the sentence.

2. 18 U.S.C. § 4203(a) provides in part: "If it appears to the Board of Parole from a report by the proper institutional officers or upon application by a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole."

Two public bodies have taken diverse views on the question of the reviewability of the Parole Board's discretion. The Task Force on Corrections for the President's Commission on Law Enforcement and Administration of Justice recommended that reasons for the board's decision be given so that meaningful judicial review could be undertaken.[3]

On the other hand, the Proposed New Federal Criminal Code of the National Commission on Reform of Federal Criminal Laws sets forth that "discretionary action of the Board of Parole is an administrative decision not subject to judicial review on its merits." Section 3406 of the proposed code reads:[4]

"The federal courts shall not have jurisdiction to review or set aside, *except for the denial of constitutional rights or procedural rights conferred by statute, regulation or rule*, the discretionary action of the Board of Parole regarding but not limited to the release or deferment of release of a prisoner whose maximum term has not expired, the imposition or modification of conditions of a first or subsequent parole, and the reimprisonment of parolee for violation of parole conditions during the parole period." (Emphasis added).

We need not directly confront the problems of discretion or its abuse because the plaintiff has carefully limited

his quest for reasons to the exceptions noted in the proposed code of "denial of constitutional rights or procedural rights conferred by statute."

■ Even if we agree that the district court has no jurisdiction to review the Parole Board's discretion under § 4203, it does have jurisdiction to consider at least the plaintiff's statutory claim that the Board has disobeyed a nondiscretionary command that it provide reasons for its determination after exercising its discretion. Christian v. New York State Dept. of Labor, 414 U.S. 614, 617, n. 3, 94 S.Ct. 747, 39 L.Ed.2d 38 (1974).

28 U.S.C. § 1361 provides that:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

Whether the district court has jurisdiction to consider the plaintiff's constitutional claim in view of plaintiff's argument that the requisite amount in controversy (28 U.S.C. § 1331) is established by the possibility of his gaining earlier freedom, need not be addressed by us in view of our disposition of plaintiff's constitutional claim (Part IV hereof).[5]

Before considering plaintiff's constitutional and statutory claims, it may be

---

3. Task Force Report: Corrections 86 (1967): "Some record of the proceedings and the reasons for the board's decision should be made so that, where a denial of parole is challenged in court, meaningful review is possible. Courts would presumably be concerned primarily with the adequacy of parole board procedures; experience with appellate review of sentencing decisions indicates that even if courts assumed the power to review parole decisions on the merits, reversals on the ground of an abuse of discretion would be rare."

4. Final Report of the National Commission on Reform of Federal Criminal Laws: Proposed New Federal Criminal Code § 3406 and Comment, at 303–304 (1971).

5. *Cf.* 28 U.S.C. § 2255, providing for the exercise of federal jurisdiction over motions in the nature of habeas corpus by "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that *the sentence was imposed* in violation of the Constitution or laws of the United States . . . ." with Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973), where the Supreme Court held that "when *a state prisoner* is challenging the very fact of duration of his physical imprisonment and the relief he seeks is a determination that he is entitled to immediate or speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." (All emphasis added).

helpful to review some recent administrative developments.

### III

The Administrative Conference of the United States, created by the Administrative Conference Act (5 U.S.C. § 571), consisting in part of all of the heads of independent regulatory agencies, executive departments and other administrative agencies (§ 573(b)) and empowered to "adopt such recommendations as it considers appropriate for approving administrative procedure" (§ 575(a)(1)), adopted the following recommendation on June 9, 1972: [6]

"A statement of reasons for the deferral or denial of parole should in all instances be given the prisoner. In some cases the Board can simply adopt as its own decision the examiner's recommendation.[7] The cases where this is not appropriate may well be so voluminous [8] as to require the use of a check-list form, such as that with which the Board is now experimenting,[9] but there should in each such case be added at least a sentence or two of individualized explanation."

The Conference further recommended that the Parole Board "should develop a body of fully reasoned decisions—whether granting, denying or deferring parole —in typical or recurrent fact situations" in order to "serve as time-saving precedents and as the raw material for the subsequent formulation of standards." Finally, in this area, the Conference recommended that the Board's decision should be open to public inspection.[10]

In the preparation leading up to the Conference's recommendations, it developed the advantages inherent in giving reasons,[11] as well as the "pitfalls to be avoided."[12]

6. Administrative Conference Recommendation 72–3: Procedures of the United States Board of Parole (adopted June 9, 1972), 25 Ad.L.Rev. 531, 534 (Fall, 1973).

7. A report on "Federal Parole Procedures" submitted to the Administrative Conference on January 1, 1972, included an appendix detailing a study of Parole Board files which indicated that each file submitted to the Board includes a summary prepared by the Board member or examiner who conducts the parole interview or hearing. The document summarizes the contents of the file and the impressions of the interview and concludes with a recommendation as to parole, stating reasons for or against. 25 Ad. L.Rev. 459, 512 (Fall, 1973).

8. "The U. S. Board of Parole consists of eight members and employs a staff of eight examiners. It conducts about 17,000 proceedings a year relating to the grant or denial of parole, involving about 12,000 prison interviews. . . ." 25 Ad.L.Rev. 531 (Fall, 1973).

9. In discussing with the Informal Action Committee of the Administrative Conference the recommendation which was later adopted by the Conference, the Chairman of the Parole Board advised the Committee that the Board was experimenting with a check-list form "for giving reasons, through the caseworker, to inmates denied parole." The check-list contained prepared reasons, both in the generic terms of the statutory criteria as well as in more specific terms, and a category headed "Other" for different or special reasons. 25 Ad.L.Rev. 517, 525 (Fall, 1973).

10. 25 Ad.L.Rev. 531, 534 (Fall, 1973). The recommendation also provided that the prisoner's name could be deleted "to avoid a clearly unwarranted invasion of privacy."

11. "Giving reasons for denying parole is desirable for both rehabilitational and legal reasons. A prisoner may feel less resentful of a negative decision if he knows the reasons for it, and in planning his activities in the institution he ought to understand clearly what will help him to obtain an early parole. When the nature of his crime is such that early parole is not likely in any event, he should be protected from unrealistic hopes that can only lead to disappointment and bitterness. All this is the job of a prison counselor in any case, but the Parole Board can make that job much easier by formally stating its reasons.

"From the legal standpoint, requiring a statement of reasons makes it possible to check abuse or error. There is no way to discover if the Board is denying parole for an unconstitutional or improper reason if the Board never gives reasons for its decisions. It is not to impugn the good faith or competence of the Board to suggest the pos-

12. See note 12 on page 1341.

The Parole Board has taken the position that it will experiment with giving reasons on a limited basis if doing so does not cause "extensive delays in the delivery of parole decisions to inmates, resulting in rehabilitative damage out-weighing any advantages."[13] The Board has published a list of 27 unweighted factors which guide its decision whether to grant or deny parole,[14] but the Administrative Conference believes that "a more specific formulation of the stand-

sibility that in some cases it might rely on reasons for denying parole that the courts would feel were improper or unconstitutional if they knew of them." Johnson, "Federal Parole Procedures," report submitted to the Administrative Conference of the United States on January 1, 1972, 25 Ad.L.Rev. 459, 484–85 (Fall, 1973).

12 "There are three pitfalls to be avoided in the giving of reasons. First, it would be disastrous to introduce any further delay into parole decision-making. One of the most frequent criticisms of the Board today is that it keeps prisoners in suspense for too long. It would be better not to give reasons at all than to give them and spend weeks or months drafting them. Second, it is vital that the reasons be written to give the prisoner a fair and candid statement of why he is not being paroled, and not merely to satisfy the courts. Nothing would be gained by giving reasons if the Board retained a legal staff to draft them with an eye to justifying the decision in the event of litigation. The Board must state why it is denying parole, and not necessarily how it feels the denial might be most persuasively justified in court. Third, the reasons must be reasonably specific. It does no good to tell a prisoner he is being denied parole because he is a danger to society unless he is told why he is so regarded, and whether there is anything he can do to convince the Board otherwise." 25 Ad.L.Rev. 459, 485 (Fall, 1973).

13. Memorandum dated February 16, 1972 by the Chairman of the Parole Board, 25 Ad.L. Rev. 517, 525 (Fall, 1973). Senator Percy has suggested that giving reasons would not delay the delivery of a decision if the decision were required within a short time and detailed reasons were required within a longer period of time. Percy, "Blueprint for a Criminal Justice System," 119 Cong.Rec.No. 47 (March 27, 1973).

14. Rules of the United States Board of Parole (1971) pp. 14–16; 25 Ad.L.Rev. 496–97 (Fall, 1973):
"The following factors are considered by the Board in its decision making.
"A. Sentence Data
1. Type of sentence
2. Length of sentence
3. Recommendations of Judge, U. S. Attorney and other responsible officials

"B. Facts and Circumstances of the Offense
1. Mitigating and aggravating factors
2. Activities following arrest and prior to confinement, including adjustment on bond or probation, if any
"C. Prior Criminal Record
1. Nature and pattern of offenses
2. Adjustment to previous probation, parole and confinement
3. Detainers
"D. Changes in Motivation and Behavior
1. Changes in attitude toward self and others
2. Reasons underlying changes
3. Personal goals and description of personal strengths or resources available to maintain motivation for law-abiding behavior
"E. Personal and Social History
1. Family and marital
2. Intelligence and education
3. Employment and military experience
4. Leisure time
5. Religion
6. Physical and emotional health
"F. Institutional Experience
1. Program goals and accomplishments in areas:
(a) Academic
(b) Vocational education, training or work assignments
(c) Recreation and leisure time use
(d) Religion
(e) Therapy
2. General adjustment:
(a) Inter-personal relationships with staff and inmates
(b) Behavior, including misconduct
3. Physical and emotional health, and treatment
"G. Community Resources, Including Release Plans
1. Residence; live alone, with family, or others
2. Employment, training, or academic education
3. Special needs and resources to meet them
"H. Use of Scientific Data and Tools
1. Psychological and psychiatric evaluations
2. Pertinent data from the uniform parole reporting system
3. Other statistical data
4. Standardized tests"

ards of decision should be possible after the development of a body of reasoned decisions."[15]

The Administrative Conference recommendations relating to the giving of reasons are the culmination of a long period of dissatisfaction with Parole Board procedure in this regard. Professor Kenneth Culp Davis has said:[16]

"Because no one ever knows the reason for any decision of the board, no prisoner is ever told why the board has denied parole. . . . Even the most flagrant abuse of discretion is likely to go uncorrected. . . . Withholding reasons is likely to harm the rehabilitation process."

Several states have instituted judicially or legislatively inspired requirements of reasons for the denial of parole.[17]

The administrative trend is toward greater procedural safeguards in the parole release hearing, including the stating of reasons for denial, but the plaintiff can succeed only if such statement is constitutionally or statutorily mandated.

### IV

It is no longer necessary to draw a hard and fast line between affording the full panoply of procedural due process or giving none. Categorization of "rights" as opposed to privileges or acts of grace or clemency has ceased being a touchstone.

■ Full procedural due process is required during a criminal prosecution; some but not full due process must be accorded thereafter during parole revo-

cation proceedings. Parole release proceedings have not been as clearly identified.

Morrissey v. Brewer, 408 U.S. 471, 480–482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) has established the benchmarks for parole revocation:

". . . [T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.

". . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands. . . .

\* \* \* \* \* \*

"We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others."

The Court then determined the minimum requirements of due process, which included "a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole." 408 U.S. at 489, 92 S.Ct. at 2604. Subsequently, the Court held that parole revocation hearings could be conducted without the participation of counsel. Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).[18]

15. Administrative Conference Recommendation 72–3: Procedures of the United States Board of Parole (adopted June 9, 1972), 25 Ad.L.Rev. 531 (Fall, 1973).

16. Davis, Discretionary Justice: A Preliminary Inquiry 128, 131 (1969). See also, Gaylin, No Exit, Harper's Magazine 86 (November, 1971), wherein the author claims knowledge of routine parole being granted to Jehovah's Witnesses between 1967–1970 and denied to other war resisters because the Witnesses were considered to be "True Cos."

17. New Jersey: Monks v. New Jersey State Parole Board, 58 N.J. 238, 249, 277 A.2d 193, 199 (1971). Michigan and Wisconsin: Dawson, The Decision to Grant or Deny Parole: A Study of Parole Criteria Law and Practice, 1966 Wash.U.L.Q. 243, 302. Illinois: Ill.Rev.Stats.1973, c. 38, § 1003–3–5(f) (Commentary: "This section requires the Board to state the basis of its decision in its own records and in notice to the applicant.").

18. We have applied the same conclusion to parole release hearings. Ganz v. Bensinger, 480 F.2d 88 (7th Cir. 1973).

The district court and circuit courts are now entering the area of what, if any, due process is required in parole release hearings.[19] The Second Circuit Court of Appeals held in the pre-*Morrissey* case of Menechino v. Oswald, 430 F. 2d 403, 404, 412 (2nd Cir. 1970) that a parole release interview "represents an aspect of state prison discipline, not an adjudication of rights in an adversary proceeding," and does not entitle a prisoner to notice, hearing or "specification of the grounds and underlying facts upon which the determination was based."

A panel of the Fifth Circuit also in a pre-*Morrissey* decision in Scarpa v. United States Board of Parole, 468 F.2d 31 (5th Cir. 1972) held in effect that the interest of the prisoner is the same in a release hearing as in a revocation hearing. The panel decision was overturned by the court *en banc* which held that "[i]f the Board refuses to grant parole, Scarpa has suffered no deprivations." 477 F.2d 278, 282 (5th Cir. 1973).[20] The *Scarpa* judgment was vacated by the Supreme Court and remanded for consideration of mootness. 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44 (1973).

A district court has held that due process requires the Board of Parole to disclose to the prisoner the grounds on which parole is denied. United States ex rel. Johnson v. Chairman of New York State Board of Parole, 363 F.Supp. 416 (E.D. N.Y.1973). .

We have held that in-prison disciplinary proceedings leading to the revocation of good-time credits require some

"written statement of the disposition of the charge." United States ex rel. Miller v. Twomey, 479 F.2d 701, 716 (7th Cir. 1973). On the other hand, in Farries v. United States Board of Parole, 484 F.2d 948, 949 (7th Cir. 1973), we cited Menechino v. Oswald, *supra,* for the proposition that "a prisoner need not be accorded a hearing on his application [for parole] or provided with a statement of reasons."[21] Petitioner argues that *Menechino* is no longer acceptable authority because it was decided before *Morrissey*.

Although a substantial argument can be made that some modicum of due process should attend the denial of the expectation of conditional freedom on parole inasmuch as its termination after having been granted inflicts a "grievous loss" of a "valuable liberty" (Morrissey v. Brewer, 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)), we need not meet the constitutional challenge in view of the construction we place upon the Administrative Procedure Act in Part V hereof.

**V**

■ The Administrative Procedure Act (APA) applies to each "agency" which means "each authority of the Government of the United States." 5 U.S.C. § 551(1). Congress created the United States Parole Board in the Department of Justice, consisting of eight members to be appointed by the President by and with the consent of the Senate. 18 U.S. C. § 4201. There is no language in the APA exempting the Parole Board from its application.[22]

19. The 12,000 annual parole interviews are commonly called "hearings" although they average only 10–15 minutes each and the only persons present are the member or examiner, a stenographer, the inmate and his institutional counselor. 25 Ad.L.Rev. 459, 468 (Fall, 1973).

20. The majority of the *en banc* court also held that the full panoply of due process protections does not attach "every time the government takes some action which confers a new status on the individual or denies a request for a different status." 477 F.2d

278, 282. This does not take account of the *Morrissey* standard that some if not all procedural requirements may be available to the prisoner.

21. In that case we reversed the summary dismissal of a *pro se* petition for mandamus where a federal prisoner claimed that his parole was denied because of religious discrimination.

22. "Exemptions from the . . . Administrative Procedure Act are not lightly to be presumed." Marcello v. Bonds, 349 U.S. 302, 310, 75 S.Ct. 757, 762, 99 L.Ed. 1107

In Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 236–237 (1963) Mr. Chief Justice (then Judge) Burger wrote the *en banc* opinion holding that § 554 of the APA did not apply to parole revocation proceedings inasmuch as that section applies by its terms "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing." 5 U. S.C. § 554(a). The court said:

"These words limit coverage of the Administrative Procedure Act to agencies which are required by their own statute of creation to *adjudicate*, after *hearing*. Our conception of the functions of the Board, discussed in this opinion, leads us to the conclusion that the Board does not adjudicate, nor is it required to hold hearings, in the sense that those words are employed in the Administrative Procedure Act." (Emphasis in original).

The *Hyser* court did not consider § 555(e) which provides as follows:

"Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial."

Section 555 applies "according to the provisions thereof" and the provisions of § 555(e) apply to a "written application, petition, or other request of an interested person made in connection with any agency proceeding." To be considered for parole a prisoner must make a written application.[23]

■ The term "agency proceeding" is far broader than the "adjudication after hearing" considered in *Hyser*. Agency proceeding is defined to include rulemaking, licensing and adjudication. Adjudication is defined as "agency process for the formulation of an order." 5 U. S.C. § 551(5), (7), (9), (12).[24]

A parole release hearing or interview is an "agency proceeding" within the Congressional intent:[25]

"This subsection affords the parties in any agency proceeding, *whether or not formal or upon hearing*, the right to prompt action upon their requests, immediate notice of such action, and a statement of the actual grounds therefore. The latter should in any case be sufficient to apprise the party of the basis of the denial." (Emphasis supplied).[26]

The application of § 555(e) to parole release hearings has not been squarely adjudicated. The few opinions dealing with the applicability of the APA in addition to *Hyser* have either denied the application to parole release hearings of

---

(1955); Brownell v. Tom We Shung, 352 U.S. 180, 185, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956). See also Renegotiation Board v. Bannercraft Clothing Co., Inc., —— U.S. ——, ——, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974).

23. Report submitted to the Administrative Conference of the United States on January 1, 1972, "Federal Parole Procedures," 25 Ad.L.Rev. 459, 480 (Fall, 1973).

24. The holding in *Hyser* that an order denying parole is not an "adjudication required by statute to be determined on the record" within the meaning of § 554(a) did not purport to consider whether such an order is an "adjudication" as defined in § 551(7). If, as we hold, the Board is an "agency" as defined in § 551(1), we think the statutory definitions of "adjudication" and "order"

lead inescapably to the conclusion that a parole release hearing is an agency proceeding.

25. S.Doc.No.248, 79th Cong., 2d Sess. 206, 265 (1946).

26. In Washington v. Hagan, 287 F.2d 332, 334 (3rd Cir. 1960), the court in holding that a parolee was not entitled to counsel at a parole revocation hearing simply said "Nor can we believe that the Administrative Procedure Act, 5 U.S.C. § 1005 [now § 555], was ever intended to cover this kind of a case." The right to counsel appears, however, not in § 555(e), but in § 555(b). Professor Davis has taken the position that § 555(b) applies to Parole Board release hearings (Davis, Administrative Law Treatise 376 (1970 Supp.) and that § 555(e) also does (Davis, Discretionary Justice: A Preliminary Inquiry 129 (1969)).

the judicial review sections (5 U.S.C. §§ 701–706), Hiatt v. Compagna, 178 F.2d 42, 45 (5th Cir. 1949), aff'd by equally divided court, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639 (1950), or have approved such application, Hurley v. Reed, 110 U.S.App.D.C. 32, 288 F.2d 844, 845–846 (1961); Sobell v. Reed, 327 F.Supp. 1294, 1301–1302 (S.D. N.Y. 1971).

We hold that § 555(e) does apply to parole release hearings and requires "a brief statement of the grounds for denial."

We reverse the district court's order of dismissal and remand this cause to determine whether in fact the plaintiff's application was in writing and if so to take further proceedings consistent with this opinion.[27]

Reversed and remanded.

27. If the district court finds that the plaintiff's application was in writing and that 5 U.S.C. § 555(e) therefore applies, the district court may seek to determine the matter of its timing in order to insure that this requirement will not delay the delivery of parole hearing decisions.