Willie THOMPSON, Plaintiff-Appellant,

v.

UNITED STATES of America, FEDER-
AL PRISON INDUSTRIES,
Defendant-Appellee.

No. 73-2573
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 19, 1974.

Willie Thompson, pro se.

Ralph E. Harris, Asst. U. S. Atty., El
Paso, Tex., for defendant-appellee.

Before BELL, GODBOLD and GEE,
Circuit Judges.

BELL, Circuit Judge:

Willie Thompson, who is presently im-
prisoned in the Federal Correctional In-
stitution at Anthony, New Mexico-Tex-
as, filed an action, styled as a mandamus

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5
Cir., 1970, 431 F.2d 409.

action under 28 U.S.C.A. § 1361, in the district court below seeking "back compensation" and industrial good time for an injury allegedly suffered during the course of his employment with the Federal Prison Industries.[1] The district court granted the Government's motion to dismiss. We vacate and remand with direction.

The district court dismissed on the ground that 28 C.F.R., § 301.1 et seq. requires an inmate to be within 30 days of release before claims for compensation can be filed and that appellant had not exhausted his administrative remedy in that the Inmate Compensation Board had not finally ruled on appellant's claim for disability benefits. As will be seen, the district court did not reach the question whether appellant was due partial interim compensation under the applicable regulations.

Appellant alleged that in November, 1971 while confined in the United States Penitentiary at Leavenworth, Kansas, he injured his lower back in the process of moving racks of shoes, a job to which he had been assigned by the Federal Prison Industries. Appellant alleged that he reported the injury to his work supervisor. He was hospitalized in that institution, but later transferred to the Medical Center at Springfield, Missouri, where he underwent surgery for the removal of a ruptured disk in January or February, 1972. He further alleged that it is still necessary for him to use back and leg braces, as well as crutches to move about.

As a result of this allegedly work-related impairment, appellant sought wages and good time credits that he would have earned had the injury not occurred. He rests his claim on 28 C.F.R. § 301.10.[2]

Appellant also argued that he had exhausted all administrative avenues for relief and attached to his answer to the Government's motion to dismiss, copies of letters denying relief from the Safety Officer of the Springfield Penitentiary and the Director of the Bureau of Prisons. [3]

■ By virtue of the enactment of 18 U.S.C.A. § 4126, the Federal Prison Industries is authorized to compensate inmates or their dependents for injuries sustained in the course of their employment with the corporation. These payments are to be made in accordance with the rules and regulations promulgated by the Attorney General of the United States. 28 C.F.R., § 301 et seq. sets forth the procedures and regulations governing inmate accident compensation. 28 C.F.R., § 301.5 includes the bar to processing a claim for accident compensation until 30 days before the disabled prisoner is to be released from custody. This remuneration is intended, like civilian workmen's compensation laws, to supplement lost wage capacity when the prisoner returns to the economic community; and therefore cannot be practically determined until near the release date. Included among these regulations is a provision permitting payment of partial compensation to an inmate for

1. 18 U.S.C.A. § 4126; 28 C.F.R. § 301 et seq.
2. 28 C.F.R., § 301.10 does not provide for the award of industrial good time credits as a result of employment time lost due to a work related injury. 18 U.S.C.A. § 4162 authorizing industrial good time allows a sentence reduction in the discretion of the Attorney General "for each month of *actual* employment." (Emphasis added). There is no statutory or regulatory basis for industrial good time credit for time not actually employed.
3. In a letter to appellant dated January 26, 1972, Safety Officer A. E. Wilson wrote: "There is no injury report in your central file concerning your alleged injury. There

is a specific notation in your medical file which states you were admitted to the hospital at Leavenworth on November 29, 1971 with a history of several months of gradually worsening pain in the left hip, radiating into the left leg. Some pain was noted in the low back. The record states 'no specific injury was claimed.' Based on the information available at this time, I am sorry, but I cannot recommend a continuation of your industrial pay/or good time."
Norman A. Carlson, Director of the Bureau of Prisons, relied, in a letter dated February 23, 1973, on the Safety Officer's investigation and report to reject appellant's claim.

lost wages resulting from his industries-related injury.[4] It is evident by the terminology of the section itself that this kind of compensation is not only claimable, but also collectable, while the injured is still in custody. *Cf.* Granade v. United States, 2d Cir., 1966, 356 F.2d 837, 843.

The focus of appellant's claim is for relief in terms of the partial interim 66⅔ per cent compensation allowed under the regulation, note (4), and the good time credit, if any, which may flow from such relief. This narrow claim was not considered by the district court. Indeed, the government missed the import of the claim altogether in its answer. It will be necessary therefore to vacate and remand the case to the district court for consideration of the claim as filed rather than as it was construed by the government.

On remand the district court should have in mind that the matter of awarding compensation or lost pay under the statute and regulations is a matter for determination by the prison au-

thorities, subject to the supervision of the Attorney General of the United States, 18 U.S.C.A. § 4128. The decision of the prison authorities, once made, is conclusive in the absence of a showing that the decision was arbitrary or capricious.[5]

The federal prison system has now established a formal administrative remedy, effective April 1, 1974, for consideration of complaints such as that of appellant here. Bureau of Prisons policy statement 2001.6, dated February 14, 1974. (Copy appended hereto.) Because the case is to be reconsidered and because it is not clear that it has received the attention of the prison authorities as being based on the claim for partial compensation under 18 C.F.R., § 301.10, *supra*, the district court is directed to require that appellant exhaust his prison remedy but to retain jurisdiction of the case for a reasonable time while exhaustion is in process.[6] *Cf.* Ross v. Henderson, 5 Cir., 1974, 491 F. 2d 116.

Vacated and remanded with direction.

Appendix to follow.

---

4. 28 C.F.R., § 301.10:

No accident compensation will be paid for compensable injuries while the injured inmate remains in custody. However, inmates assigned to industries will be paid wages for the number of regular work hours in excess of three consecutive inmate man days they are absent from work because of injuries suffered while in the performance of their work assignments. The rate of pay shall be 66⅔ per cent of the standard hourly rate for the grade if the injured is not helping to support dependents, and 75 per cent of the standard hourly rate for the grade if the injured is helping to support dependents. No claim for compensation will be considered if full recovery occurs while the injured is in custody and no significant disability remains after the release.

5. The jurisdictional predicate for many of these federal prisoner cases in this circuit has ranged from mandamus, Taylor v. Blackwell, 5 Cir., 1969, 418 F.2d 199, 201; *cf.* Carter v. Seamans, 5 Cir., 1969, 411 F.2d 767, to habeas corpus, Theriault v. Blackwell, 5 Cir., 1971, 437 F.2d 76, cert. denied, 402 U.S. 953, 91 S.Ct. 1637, 29 L.Ed.2d 122.

Judicially fashioned, arbitrary and capriciousness has been the consistent standard of review followed. *Theriault, supra*; Sexton v. United States, 5 Cir., 1970, 429 F.2d 1300; Taylor v. Blackwell, 5 Cir., 1969, 418 F.2d 199.

In the instant case, 18 U.S.C.A. § 4126 does not confer jurisdiction in the federal courts to review the correctness of prisoner compensation claims under the applicable regulations, *supra* note (4). Rather, jurisdiction here is found in the Administrative Procedure Act, 5 U.S.C.A. § 701 et seq., and review is governed by the arbitrary and capricious standard there prescribed. 5 U.S. C.A. § 706. *See* Abbott Laboratories v. Gardner, 1967, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681, 687; Davis, Administrative Law, § 28.03, at 510–12 (3rd ed. 1972). *See also* United States v. One 1970 Buick Riviera, 5 Cir., 1972, 463 F.2d 1168, 1171, n. 4.

6. Ordinarily the complaint should be dismissed where it appears that a federal prisoner has not exhausted his administrative prison remedy. Paden v. United States, 5 Cir., 1970, 430 F.2d 883; Quick v. Thompkins, 5 Cir., 1970, 425 F.2d 260.

APPENDIX

**BUREAU OF PRISONS**          **WASHINGTON, D. C. 20537**

# Policy Statement

| 2001.6 |
| --- |

SUBJECT:   ADMINISTRATIVE REMEDY OF COMPLAINTS
INITIATED BY OFFENDERS IN BUREAU OF
PRISONS FACILITIES

| February 14, 1974 |
| --- |

I.   PURPOSE.   This Policy Statement establishes procedures by which offenders may seek formal review of complaints which relate to their imprisonment if informal procedures have not resolved the matter.

2.   DISCUSSION.   Most complaints can be resolved quickly and efficiently through direct contact with staff who are responsible in the particular area of the problem. This is the preferred course of action.  Staff awareness of the importance of prompt attention and reply to these routine requests will minimize the use of formal complaint procedures.

A viable complaint procedure will serve the inmates, the administration, and the courts. It will provide the inmates with a systematic procedure whereby issues raised relating to their confinement, will receive attention and a written, signed response within a short period of time from the administration, including the Central Office, if appealed.

Such a procedure assists the administration by providing an additional vehicle for internal solution of problems at the level having most direct contact with the offender.  It also provides a means for continuous review of  administrative decisions and policies.  Further it provides a written record in the event of subsequent judicial or administrative review.  A viable Administrative Remedy Procedure should reduce the volume of suits filed in court and will develop an undisputed record of facts which will enable the courts to make more speedy dispositions.

If the inmate cannot resolve his complaint informally, and wishes to utilize this Administrative Remedy Procedure, he shall file his complaint with the Warden or his designee.  If not satisfied with the institution's reply, he may appeal to the Director or his designee.

An inmate may, if he chooses, forward his complaint through the Prisoners' Mail Box or he may file his law suit directly with the appropriate court.  However, courts frequently require evidence that administrative remedies have been exhausted before ruling on a complaint, and inmates should be so advised.

3.   ACTION.  The Chief Executive Officer of each Bureau of Prisons facility is responsible for the establishment and monitoring of an Administrative Remedy Procedure which is compatible with the provisions of this Policy Statement.  The operation of the program will be the responsibility of the Warden or the Associate Warden.  The investigation of complaints and the drafting of the reply should ordinarily be done by department heads or their representatives, subject to review of the Warden or Associate Warden.  The final response shall be signed by both the department head or his representative, and the reviewer.

APPENDIX—Continued

**4.** PROCEDURES. All inmates should be advised of this Administrative Remedy Procedure. This can be accomplished, among other means, by posting the local Policy Statement on inmate bulletin boards, through inmate publications and by including it in the admission-orientation program. Where appropriate, the local Policy Statement should be translated into Spanish.

It is suggested that the forms be maintained by the Correctional Counselors wherever practicable. Experience has demonstrated that complaints can frequently be resolved by the counselor.

A record of filings under this procedure shall be maintained in a log and include at least the following information: Name, Number, Date of Receipt, Subject of Complaint, and Disposition. A simple key may also be included to show whether the disposition of the complaint was essentially in the inmate's favor or against him. A copy of this log should be sent monthly to the Central Office, Office of General Counsel.

**5.** USE OF THE COMPLAINT FORM. If an inmate cannot resolve his complaint through informal contact with staff, and wishes to file a formal complaint for administrative remedy, he should secure a copy of form BP-DIR-9 and write his complaint in the space provided. He may obtain assistance from other inmates or from staff to help him complete the form. The inmate should then give the completed form to the designated staff member who in turn will provide a signed receipt for the inmate.

The complaint ordinarily must be filed within 30 days from the date on which the basis of the complaint occurred unless it was not feasible to file within such period. Institution staff have up to 15 days from receipt of the complaint, excluding week-ends and holidays, to act upon the matter and provide a written response to the inmate. When the complaint is of an emergency nature and threatens the inmate's immediate health or welfare, reply must be made as soon as possible, and within 48 hours from receipt of the complaint. The institution duty officer may be utilized in such instances.

When the proper course of action is determined, the 'Response' (Part B) should be completed and signed. One carbon copy should go to his central file, and the original and other copy given to the inmate. Responses should be made as quickly as possible, should be based upon facts, and should deal only with the issue raised, and not include extraneous material.

If the inmate is not satisfied with the institution's response, he may file an appeal to the Director, Bureau of Prisons, or his designee through the Prisoners' Mail Box. This should be done on form BP-DIR-i0 and include a completed copy of BP-DIR-9 (the initial complaint) with the institution's response. A receipt for his appeal will be sent to the inmate. The Director, or his designee, has up to 30 days from receipt of the appeal, excluding week-ends and holidays, to reply.

APPENDIX—Continued

If an inmate's complaint is of a sensitive nature, and he believes he could be adversely affected if it is known at the institution that he is making the complaint, he may file it directly with the Director, Bureau of Prisons or his designee through the Prisoners' Mail Box. In such cases, he must clearly explain a valid reason for not filing in the institution.

If the time limit expires without a reply, it will be deemed to be a denial of the request. If dissatisfied with the response to his complaint and appeal, the offender may file suit in an appropriate court and attach documentary proof that he exhausted his administrative remedy.

6. EXCEPTIONS. Nothing in this Policy Statement should be construed to affect in any way, the procedure established pursuant to the Federal Tort Claims Act, the Claims for Inmate Injury Compensation under 18 U.S.C. 4126, or procedures for appeal from Good Time Forfeiture actions pursuant to Policy Statement 7400.6A.

The period of time referred to for action by the reviewing officials may be extended for a like period upon a finding that the circumstances are such that the initial period is insufficient to make an appropriate decision. This must be communicated in writing to the inmate.

7. LOCAL ISSUANCE. The head of each Bureau of Prisons facility will develop a local Policy Statement on this subject, and forward a completed copy to the Office of General Counsel.

8. THIS POLICY IS EFFECTIVE APRIL 1, 1974.

NORMAN A. CARLSON
Director Bureau of Prisons