James Edward **MITCHELL**

v.

Maurice **SIGLER**, Chairman, U. S. Board of Parole.

No. C74–1706A.

United States District Court, N. D. Georgia, Atlanta Division.

Jan. 31, 1975.

———◆———

Howard A. Gold, Nadler & Gold, Atlanta, Ga., for plaintiff.

John A. Stokes, Jr., U. S. Atty., N. D. Ga., J. Robert Cooper, Asst. U. S. Atty., N. D. Ga., Atlanta, Ga., for defendant.

## ORDER

*MOYE, District Judge.*

Petitioner James Edward Mitchell, a federal prisoner incarcerated at the Atlanta Federal Penitentiary, seeks through counsel a writ of mandamus under 28 U.S.C. § 1361. Mitchell alleges that the United States Board of Parole's denial of parole and failure to state reasons therefor violated his constitutional and statutory due process rights.

### 1. *Facts*

Mitchell was arrested on May 17, 1970, for violation of 18 U.S.C. § 2113(d). He was convicted of the charges against him on March 10, 1971, and given a 12-year sentence pursuant to 18 U.S.C. § 4208(a)(2). After his conviction and removal to the Atlanta Penitentiary, Mitchell met with parole officials on April 23, 1974, and submitted a written parole plan to the Board in conformance with parole regulations in effect at that time, 28 C.F.R. §§ 2.12, 2.15 [Rev. Jan. 1, 1972]. On August 6, 1974, almost 15 weeks later, Mitchell was notified in writing by Steven D. Johnston, Parole Executive,

that "he was to continue with an institutional review hearing April 1977." No reason was given for denial of parole.

Mitchell's complaint is that his application for parole was "set off" for three years without the Parole Board's providing him with any reasons or guidelines enlightening him as to what corrective measures, if any he could take within the next three years to be favorably reconsidered for parole.

### 2. Pleadings

Mitchell first filed in this Court a pro se petition in forma pauperis for mandamus on August 26, 1974. The government's response to the Court's show cause order of August 26, 1974, was filed September 17, 1974. Mitchell followed by filing pro se a "Traverse to Response" on September 30, 1974. On October 7, 1974, the Court was informed that Mitchell had retained private counsel and the Court granted permission to Mitchell's counsel to file a brief in support of his petition for mandamus. A one-page "Supplemental Response" was filed by the government on October 22, 1974. Counsel for petitioner Mitchell filed a brief in support of mandamus on November 6, 1974. By its order of November 14, 1974, the Court gave the government 20 days within which to file another supplemental brief dealing in "other than a cursory fashion" with the Administrative Procedure Act [A.P.A.], 5 U.S.C. § 555(e) issues raised by the petitioner "which were being seriously considered by the Court." The government filed an "Additional Response" on December 3, 1974, addressing itself to the A.P.A. issues presented by the petitioner.

### 3. Issue Presented

The issue here is one of first impression in this district. Framed narrowly it is: Does the Administrative Procedure Act apply to parole release hearings, requiring the Parole Board to give the prisoner-applicant "a brief statement of the grounds for denial" of parole? The question was answered in the affirmative by the U. S. Court of Appeals for the Seventh Circuit in King v. United States, 492 F.2d 1337 (1974). It is precisely the holding of the King case which the petitioner urges the Court to follow.

Before reaching the issue raised by the King case, a few preliminary issues must be resolved.

### 4. Exhaustion of Administrative Remedies

The respondent urges the Court to dismiss the petition for failure of the petitioner to exhaust his administrative remedies. The respondent alleges that under the former Department of Justice Regulations for Parole, 28 C.F.R. § 2.1, et seq. (revised as of July 10, 1973), applicable to this case, the petitioner possesses an adequate interim administrative remedy to follow in lieu of filing this petition in the Court. Respondent also urges that petitioner be required first to comply with the administrative remedies afforded him by Bureau of Prisons Policy Statement No. 2001.6 (dated February 14, 1974, effective April 1, 1974), and reproduced in the appendix to Thompson v. United States, Federal Prison Industries, 492 F.2d 1082, 1085–87 (5th Cir. 1974). See also Ross v. Henderson, 491 F.2d 116 (5th Cir. 1974); McKim v. United States, Civ. No. C74–1462A (N.D.Ga., Judge Hooper, decided September 10, 1974).

The Court finds that petitioner does not have available to him unexhausted administrative remedies which could obtain for him a statement of the reasons for denial of parole.

#### a. Parole Board Regulations

The Parole Board Regulations in effect at the time of petitioner's application, April 23, 1974, published in 28 C.F.R. 2.1, et seq. (1973) [hereinafter the "prior regulations"] offer no relief to a prisoner seeking the reasons for denial of parole.[1] Under the prior reg-

---

1. These regulations were superseded by new regulations promulgated June 5, 1974, effective September 3, 1974, which do provide that the parole applicant shall be given, inter alia, a statement of reasons for the denial of parole. 28 C.F.R. § 2.13 (1974).

ulations, the only review available to applicants denied parole consisted of: (1) a periodic in-house review based on "special progress reports", § 2.21; (2) review upon receipt of "new information of substantial significance bearing upon the possibility of parole," § 2.21; and (3) review in Washington, D. C., upon application by "[a]ttorneys, relatives, and other interested persons" desiring to appear in person for a hearing with members of the Board of Parole, § 2.22(a).

No prior regulation requires the Board to state the reasons for denial of parole at the applicant's initial hearing or anytime thereafter.

### b. *Policy Statement 2001.6*

The remedies afforded by Bureau of Prisons Policy Statement No. 2001.6 are not available to the petitioner because Policy Statement 2001.6 applies only to prisoner complaints relating to conditions of imprisonment. The "purpose" of Policy Statement 2001.6, as stated therein, is to establish "procedures by which offenders may seek formal review of complaints which relate to their imprisonment if informal procedures have not resolved the matter." *Thompson, supra,* 492 F.2d at 1085. The statement is directed toward resolving administrative problems regarding prisoner living conditions during incarceration, rather than a parole applicant's entitlement to administrative procedures set out by statute. Before bringing a suit challenging prison conditions, a prisoner must show that he has exhausted the procedures provided by Statement 2001.6 See, *e. g.,* Thompson v. United States, Federal Prison Industries, 492 F.2d 1082 (5th Cir. 1974) (exhaustion of 2001.6 required before prisoner can bring suit to recover "back compensation" and industrial good time for injury suffered); Jones v. Henderson, 495 F.2d 559, (5th Cir. 1974) (exhaustion of 2001.6 procedures required before mandamus suit allowed for alleged obstruction of prisoner mail).; Ross v. Henderson, 491 F.2d 116 (5th Cir. 1974) (exhaustion

of 2001.6 required before prisoner can sue for recovery of sexually-oriented book ordered through mails and seized by prison authorities).

Respondent cites McKim v. United States, Civ. No. C74-1462A (N.D.Ga., Judge Hooper, decided September 10, 1974), for the proposition that Policy Statement 2001.6 applies to parole matters. The Court finds that the *McKim* case is clearly distinguishable on its facts from the instant case.

In *McKim,* the Court dismissed without prejudice the prisoner's habeas corpus petition which sought relief from the alleged failure of the Parole Board to consider his application for parole. The Court held that the petitioner must comply first with Policy Statement 2001.6 before seeking relief in district court. The instant case is distinguishable from *McKim* because here Mitchell is suing the Parole Board. Mr. McKim sued the Bureau of Prisons. Its procedures are inapplicable to the U. S. Board of Parole. Additionally, in *McKim,* the prisoner never appeared before the Parole Board. Here, Mitchell has had a hearing before the Board but his application was denied. Mitchell's complaint is directed against the Parole Board's failure to follow appropriate administrative procedures, not against the conditions of his imprisonment or inaction by prison officials. Only the latter fall within the purview of Policy Statement 2001.6.

Accordingly, the Court holds that in Mitchell's case there exists no applicable administrative remedy to exhaust and his mandamus suit is properly before the Court.

### 5. *Section 555(e) of the Administrative Procedure Act*

The principal ground upon which petitioner moves the Court to require from the Parole Board a statement of the reasons for his denial of parole is that the Administrative Procedure Act applies to the Parole Board. Petitioner's argument is that the Parole Board is an "agency" within the meaning of the

A.P.A., 5 U.S.C. § 555(1); that a parole release hearing is an "agency proceeding" under the A.P.A., 5 U.S.C. §§ 551(12), 555(e); and that the petitioner is entitled to a "brief statement of the grounds for denial" under the A.P.A., 5 U.S.C. § 555(e). King v. United States, 492 F.2d 1337 (7th Cir. 1974).

The respondent counters with the following arguments: (1) the language of the A.P.A. and its legislative history omit any reference to the Parole Board; therefore, Congress never intended the A.P.A. to apply to the Parole Board; (2) if § 555(e) of the A.P.A. is held applicable to the Parole Board, the other subsections of § 555 allegedly providing for "(b) counsel, (c) process, (d) subpoena, (e) discovery, (f) inspection and (g) copy of transcript" will soon be held applicable to parole release proceedings; (3) the duties of parole officers are analogous to those of probation officers who are excluded from coverage under the A.P.A., 5 U.S.C. § 551(1)(B). In many instances in the Northern District of Georgia, the duties of both are performed by the same personnel. If *King* is followed, these individuals, formerly excluded from the coverage of the A.P.A., will become subject to it; (4) the burden on the Parole Board would become intolerable if *King* is followed. The Court should refrain from following *King* in its "narrow application, findings and conclusion" and adhere to the Fifth Circuit's decision in Hiatt v. Compagna, 178 F.2d 42 (5th Cir. 1949), and the decision of the Court of Appeals for the District of Columbia in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963); (5) in addition, respondent urges the Court to stay its hand because this identical issue is now pending before the Fifth Circuit Court of Appeals in Carlew v. Henderson, No. 74–3132 (N.D.Ga., Judge O'Kelley, decided July 23, 1974).

As a preliminary matter, it cannot be said that the pending *Carlew* case fairly presents this issue before the Fifth Circuit. The Court notes that the issue of the A.P.A.'s applicability to parole denials was never presented to the District Court below in the *Carlew* case. While Mr. Carlew seems to have mentioned the issue in his pro se appellate brief to the Court of Appeals (Court of Appeals Docket No. 74–3132), this Court declines to stay its hand, awaiting decision in the *Carlew* case. The issue is not likely to be considered by the Court of Appeals because it is being presented to that Court for the first time on appeal.

The purpose of the Administrative Procedure Act was to conform all governmental agencies to certain standards of procedure when dealing with the public. In the Act, "Agency" is defined to be "each authority of the Government of the United States," 5 U.S.C. § 551(1). Congress created the United States Parole Board in the Department of Justice as an agency consisting of eight members to be appointed by the President, by and with the consent of the Senate. 18 U.S.C. § 4201. The Administrative Procedure Act has no language within its framework exempting the Parole Board from its application, although eight specified exemptions are provided for by the Act. 5 U.S.C. § 551(1). Respondent urges that silence of the statute concerning the Parole Board indicates Congress's intention to exempt the Board from the Act.

This point is not well-taken. As the U. S. Court of Appeals for the District of Columbia stated in Pickus v. United States Board of Parole, 507 F.2d 1107 (1974):

"None of the specified exclusions [in 5 U.S.C. § 551(1)(A–H)] embraces the [Parole] Board. Moreover, this court has said that the Act, including the definitional section, should be received hospitably. *See, e. g.* Soucie v. David, 1971, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1073; Chotin Towing Corp. v. Federal Power Commission, 1957, 102 U.S.App.D.C. 69, 250 F.2d 394. Legislative history, though sparse, supports a broad, inclusive reading of the Act. S.Doc. No. 248,

79th Cong., 2d Sess. (1946) at 196, 253, 305, 354."

The *Pickus* case held that the Parole Board and its procedure for promulgating regulations were governed by the Administrative Procedure Act, 5 U.S.C. § 553.

In answering the Parole Board's "exemption" argument, the Court in *Pickus* stated:

"None of the Board's arguments for exemption are impressive. The fact that the legislative history of the Act makes no reference to the Board or its unique problems is not significant because the same is true for a great number of agencies that unquestionably are covered. Indeed, the bill was not drafted as one which dealt with particular agencies by name, but rather as a regulation of particular types of functions in which agencies of the Executive Branch generally engage. S.Doc. No. 248 at 191 (S.Rep.), 250 (H.R.Rep.). Thus, some types of functions were exempted, not particular Executive Departments or agencies. Such functions as this case presents were not exempted.[7]

7. "Revocation proceedings have often been held not subject to the Act, e. g., Hyser v. Reed, 1963, 115 U.S.App.D.C. 254, 318 F. 2d 225, 237 (en banc), cert. denied 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315; Hiatt v. Compagna, 5th Cir. 1949, 178 F. 2d 42, *aff'd by an equally divided court*, 1950, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639, but whether the Board was an agency was not at issue.

"The Board's legislative history argument seems, if anything, contrary to its position. The Walter-Logan bill, H.R. Bill No. 6324, 76th Cong. 3d Sess. (1940), a predecessor of the Act which President Roosevelt vetoed, contained an express exemption for the Department of Justice that would have covered the Board. S.Doc. No. 145, 76th Cong. 3d Sess. (1940) at 24–25. The Act, however, contains no exemption for either the Department or the functions at issue here. Its draftsmen were familiar with the then recently ill-fated Walter-Logan bill and delib-

erately adopted a different scheme. Whether, as the Board argues, 'the rationale for exemption of the criminal process . . . remains viable', is irrelevant to this case since Congress abandoned that approach." [Other footnotes omitted]

"In Hurley v. Reed, supra, 110 U.S. App.D.C. [32] at 34, 288 F.2d [844] at 846, this court said that 'the Board is clearly an administrative agency . . .' although that was not the issue there."

In addition, the Supreme Court has declared that "Exemptions from the . . . Administrative Procedure Act are not lightly to be presumed." Marcello v. Bonds, 349 U.S. 302, 310, 75 S.Ct. 757, 762, 99 L.Ed. 1107 (1955).

The Court in *Pickus* rejected the argument, also advanced by the government here, that the Parole Board is exempt from the Act because the Probation Service is exempt:

"We find unpersuasive an argument of the Board that it is exempt because the Probation Service is exempt. The exemption of the latter is warranted not by the functions it performs as the Board suggests, but by its status as an auxiliary of the courts, which, unlike agencies of the executive branch, are specifically excluded." [5 U.S.C. § 551(1)(B)]

The *King* case was the first case to hold that Section 555(e) was applicable to the Parole Board. Other case law construing the A.P.A.'s application to parole matters has been based on other sections of the Administrative Procedure Act.

The *Pickus* case, *supra,* held Section 553, "Rule Making," applicable to the Parole Board.

The respondent cites in support of its position Hiatt v. Compagna, 178 F.2d 42 (5th Cir. 1949), aff'd by an equally divided court, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639 (1950); and Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963).

However, neither case is grounded on Section 555. *Hiatt v. Compagna, supra,* is one of a few opinions dealing with the effect of the judicial review sections, 5 U.S.C. §§ 701–706, on the Parole Board's *discretion* in denying parole. While *Hiatt* holds that there is no judicial review of the Parole Board's discretion, the cases of Hurley v. Reed, 110 U.S.App.D.C. 32, 488 F.2d 844, 845–846 (1961); and Sobell v. Reed, 327 F.Supp. 1294, 1301–1302 (S.D.N.Y.1971), hold the opposite.

Neither the *Hiatt,* nor the *Hurley,* nor the *Sobell* case is applicable to the instant case. At issue is not whether the district court's review of Mitchell's denial of parole is barred by 5 U.S.C. § 701 (a)(1), (2) because (1) "statutes preclude judicial review" or because (2) the Parole Board's action "is committed to agency discretion by law." The issue here is whether the Parole Board followed statutorily mandated administrative procedure embodied in § 555(e) in the exercise of that discretion.

The case of Hyser v. Reed, *supra,* must be distinguished because it deals with § 554 of the Act. Section 554 outlines procedures for those agency adjudications (1) required by statute, (2) to be determined on a record, and (3) after an opportunity for a hearing. In Hyser v. Reed, *supra,* Mr. Chief Justice (then Judge) Burger wrote an *en banc* opinion holding that Parole Board release hearings were not "adjudications" under § 554, because the Parole Board was not required by statute to make an "adjudication" concerning parole, after a "hearing" and a "record." 318 F.2d at 237 (1963). Therefore § 554 was held inapplicable to parole release hearings.

The *Hyser* court, however, never considered § 555(e), which is the grounding for the *King* case. Section 555(e) provides as follows:

"Prompt notice shall be given of the denial in whole or in part of a *written*

*application,* petition, or other request of an interested person made in connection with any *agency proceeding.* Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial." (emphasis supplied)

As *King* noted, in order to be considered for parole, a prisoner must make a written application.[2] A parole release hearing or interview is an "agency proceeding" within the Congressional intent.[3] The term "agency proceeding" is a broad term defined in 5 U.S.C. § 551(12) to include "rulemaking," "adjudication" and "licensing." 5 U.S.C. § 551(5), (7), (9). The type of "adjudication" included as an "agency proceeding" under § 551(12) is defined in § 551(7) as an "agency process for the formulation of an order," and must be distinguished from the statutorily mandated adjudications provided for by § 554, and held inapplicable to parole release hearings by the *Hyser* case. The difference between an "adjudication" under § 554 and an "adjudication" under § 555 is significant. Section 554 applies to adjudications required by statute, § 554(a). Section 555 applies to all other "adjudications" which, unlike § 554 adjudications, are "ancillary" in nature, § 555. Section 555 is applicable only to those agency proceedings not otherwise provided for by §§ 551 to 559, § 555(a).

The Court of Appeals in *King* expressly recognized that a parole release hearing could be an "adjudication" under § 551(7), (12), and therefore an "agency proceeding" under § 555(e), yet not an "adjudication" under § 554(a). The Court stated in footnote 24, 492 F.2d 1344:

"24. The holding in *Hyser* that an order denying parole is not an 'adjudication required by statute to be determined on the record' within the

---

2. Report submitted to the Administrative Conference of the United States on January 1, 1972, "Federal Parole Procedures," 25 Ad. L.Rev. 459, 480 (Fall, 1973). 492 F.2d at 1344.

3. S.Doc.No.248, 79th Cong., 2d Sess. 206, 265 (1946), cited in *King,* 492 F.2d 1344, n. 25.

meaning of § 554(a) did not purport to consider whether such an order is an 'adjudication' as defined in § 551 (7). If, as we hold, the Board is an 'agency' as defined in § 551(1), we think the statutory definitions of 'adjudication' and 'order' lead inescapably to the conclusion that a parole release hearing is an agency proceeding."

■ This Court is convinced that the reasoning of *King* is sound and that under the provisions of 5 U.S.C. § 555(e), a federal prisoner denied parole by the U.S. Board of Parole is entitled to: (1) prompt notice of the denial (except where a prior denial is affirmed or the denial self-explanatory) and (2) a brief statement of the grounds for denial.

The respondent contends that if § 555(e) is held applicable to the Parole Board, the other subsections of § 555 providing for "(b) counsel, (c) process, (d) subpoena, (e) discovery, (f) inspection and (g) copy of transcript" will soon be held applicable to parole release proceedings. This litigation is concerned only with § 555(e). We cannot avoid decision as to the issue here because other issues, undeveloped on this record, may appear later. An examination of the other subsections of § 555 would indicate, however, that no other procedural rights provided for in § 555 could be extended to future parole release hearings unless (1) already permissible under the new parole regulations, 28 C.F.R. § 2.1 et seq. (1974), or (2) already authorized by the parole statute, 18 U.S.C. § 4201 et seq.

Pursuant to its newly promulgated regulations, 28 C.F.R. § 2.13 (1974), the Parole Board has already adopted the policy of giving prompt notice and the reasons for parole denial to those prisoners whose parole release hearings were held after September 3, 1974. In other words, the Parole Board is presently following the mandate of *King*, giving reasons to those prisoners who were denied parole after September 3, 1974.

For those prisoners denied parole before September 3, 1974, without a statement of reasons, the Board in implementing *King* would have to (1) publish the reasons for the denial of parole as stated in the prisoner's file, or (2) hold a new hearing under the new regulations. While the Parole Board might suffer an initial backlog following the decision of this Court to implement King, it would soon be alleviated as parole applicants denied parole, as a matter of course, were given a brief statement of the reasons for denial under the currently applicable regulations, 28 C.F.R. § 2.13 (1974).

The effect on prisoners and the parole system of the giving of a statement of the reasons for denial of parole would seem to the Court to be beneficial.

The Administrative Conference of the United States adopted the recommendation on June 9, 1972, that "A statement of reasons for the deferral or denial of parole should in all instances be given the prisoner." [4] By its new regulations, effective September 3, 1974, the Parole Board has adopted that policy. The advantages and pitfalls to be avoided in giving prisoners reasons for denial of parole were discussed in the report submitted to the Administrative Conference and cited by *King* in notes 11 and 12 of the opinion, 492 F.2d 1340–41:

"11. 'Giving reasons for denying parole is desirable for both rehabilitational and legal reasons. A prisoner may feel less resentful of a negative decision if he knows the reasons for it, and in planning his activities in the institution he ought to understand clearly what will help him to obtain an early parole. When the nature of his crime is such that early parole is not likely in any event, he should be protected from unrealistic hopes that can only lead to disappointment and bitterness. All this is the job of a prison counselor in any case, but the Parole Board can make that job much easier

4. Administrative Conference Recommendation 72–3: Procedures of the United States Board of Parole (adopted June 9, 1972), 25 Ad.L. Rev. 531, 534 (Fall, 1973).

by formally stating its reasons. . . . Johnson, 'Federal Parole Procedures,' report submitted to the Administrative Conference of the United States on January 1, 1972, 25 Ad.L.Rev. 459, 484–85 (Fall, 1973).

"12. 'There are three pitfalls to be avoided in the giving of reasons. First, it would be disastrous to introduce any further delay into parole decision-making. One of the most frequent criticisms of the Board today is that it keeps prisoners in suspense for too long. It would be better not to give reasons at all than to give them and spend weeks or months drafting them. Second, it is vital that the reasons be written to give the prisoner a fair and candid statement of why he is not being paroled, and not merely to satisfy the courts. Nothing would be gained by giving reasons if the Board retained a legal staff to draft them with an eye to justifying the decision in the event of litigation. The Board must state why it is denying parole, and not necessarily how it feels the denial might be most persuasively justified in court. Third, the reasons must be reasonably specific. It does no good to tell a prisoner he is being denied parole because he is a danger to society unless he is told why he is so regarded, and whether there is anything he can do to convince the Board otherwise.' 25 Ad.L.Rev. 459, 485 (Fall, 1973)."

Although *King* was decided before the new parole regulations were promulgated on June 5, 1974, 39 Fed.Reg. 20028, *King* is made no less applicable by the regulations. The publishing of the new regulations demonstrates the need for a statement of reasons. Prisoners denied parole before September 3, 1974, are ignorant of the reasons for denial and, like petitioner Mitchell, are often "continued" or "set off" for three years

until their next institutional review hearing. Fellow inmates denied parole after September 3, 1974, benefit from the knowledge of reasons why parole was denied. The hardship and unfairness to a prisoner trying to improve his prison behavior, plan his institutional activities and preserve hopes of release, yet denied parole without a statement of reasons, is heightened by the knowledge that a fellow inmate, for purely chronological reasons, learned the reasons for his parole denial.[5]

### 6. *The Fifth Amendment Due Process Claim*

Petitioner invites the Court to hold, that as *constitutional* matter of due process under the Fifth Amendment, he is entitled to a statement of reasons for denial of parole; *see* Childs v. United States Board of Parole, 371 F.Supp. 1246 (D.D.C.1973) (federal prisoners); Bradford v. Weinstein, No. 73–1751 (4th Cir., decided November 22, 1974) (state prisoners); Johnson v. Chairman of New York Board of Parole, 363 F.Supp. 416 (E.D.N.Y.1973), aff'd., 500 F.2d 925 (2d Cir., 1974) (state prisoners), vacated for mootness sub nom. Regan v. Johnson, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974). The Supreme Court held in Wolf v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), that constitutional due process required state prison authorities, *inter alia*, to provide to the prisoner a written statement by the factfinders as to evidence relied on and reasons for disciplinary action taken against a prisoner by prison authorities.

The Court notes that such a constitutional claim was rejected by the Fifth Circuit in Scarpa v. United States Board of Parole, 477 F.2d 278 (1973), remanded for considerations of mootness, 414 U.S. 809 (1973), and subsequently held moot, 501 F.2d 992 (1973). Although *Scarpa* no longer has precedential value, Rid-

---

5. The court notes that for those prisoners sentenced under 18 U.S.C. § 4208(a)(2) and others similarly situated, the Parole Board has now undertaken to apply § 2.14(b) (reconsideration provision) of its new regulations "across-the-board" at the completion of one-

third of the prisoner's sentence regardless of the prisoner's original set-off date. See Castro v. Warden, Civil Action No. 74–2294 (N.D.Ga., Judge R. Freeman, decided January 6, 1974).

**1020**

ley v. McCall, 496 F.2d 213 (5 Cir. 1974), this Court has followed the authority in this district upholding the reasoning of *Scarpa*, and rejecting the constitutional claim. Carlew v. Henderson, Civ.No.C74–1491A (N.D.Ga., decided by Judge O'Kelley, July 23, 1974).

Having arrived at a decision on statutory grounds, there is no need, and it would be improper, to proceed to decision on the constitutional claim.

### 7. *Conclusion*

Accordingly, the Court holds that 5 U.S.C. § 555(e) of the Administrative Procedure Act does apply to parole release hearings and requires "a brief statement of the grounds for denial."

The Court ORDERS Mitchell's petition for mandamus GRANTED, 28 U.S. C. § 1361, to this extent: the respondent shall afford the petitioner "a brief statement of the grounds for denial" of his parole, based on information contained in petitioner's file, or if necessary, the respondent shall schedule the petitioner for a new parole release hearing in compliance with the Parole Board's regulations effective September 3, 1974, 28 C.F.R. § 2.1, et seq. (1974).