UNITED STATES of America ex rel.
Charles RICHERSON,
Petitioner-Appellant,

v.

Dennis WOLFF, Warden, Sheridan In-
stitution, and the Illinois Parole and
Pardon Board, Respondents-Appellees.

No. 75–1241.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1975.

Decided Nov. 20, 1975.

Certiorari Denied April 5, 1976.
See 96 S.Ct. 1511.

Frank S. Merritt, Chicago, Ill., for pe-
titioner-appellant.

William J. Scott, Atty. Gen., Mel-
bourne A. Noel, Jr., Asst. Atty. Gen.,
Chicago, Ill., for respondents-appellees.

Before HASTINGS, Senior Circuit
Judge, and SPRECHER and BAUER,
Circuit Judges.

SPRECHER, Circuit Judge.

The questions raised by this appeal are
whether the Due Process Clause of the
Fourteenth Amendment requires that
state prisoners be given reasons for the
denial of parole release and whether Ill.
Rev.Stats. ch. 38, § 1003–3–5(c) provides
adequate reasons.

I

Upon being granted leave to file his
petition *in forma pauperis*, the petition-
er, Charles Richerson, filed his petition
for a writ of habeas corpus on January
6, 1975. In his *pro se* "Argument to
Support Habeas Corpus Petition," peti-
tioner argued that he was denied parole
because the granting of parole "would
deprecate the seriousness of such an of-
fense and would not deter others from
committing such crimes" and that such
reasons were vague and uninformative.
Petitioner concluded that

. . . this Court should grant him
his release and thereafter require the
Illinois Parole and Pardon Board to
inform inmates in the future who have
been denied parole (1) the reason for
refusal of parole, (2) the conditions
and requirements which he must fulfill
for favorable consideration, and (3) a

probable but although not guaranteed release date if such conditions are met. Such procedure and requirements would seem to meet the Due Process Clause better than the present procedure and requirements.

The respondents to the petition were the Warden of the Sheridan Correctional Center, Sheridan, Illinois, where petitioner was detained, and the Illinois Parole and Pardon Board. Upon the entry by the district court of a rule upon them to plead, the respondents filed a motion to dismiss in which they alleged that the petitioner had been sentenced on August 1, 1972, for three counts of attempted murder and one count of aggravated assault for a term of six to twelve years. The respondents sought dismissal of the petition on the grounds primarily that the reasons given were sufficient and such reasons were "specifically promulgated by the Illinois legislature . . . to deny parole."

In petitioner's answer to respondents' motion to dismiss, petitioner quoted from the district court opinion in *United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 363 F.Supp. 416 (E.D.N.Y.1973), one of the earlier opinions holding that due process requires disclosure of reasons for denying release on parole.

In an order dated February 3, 1975, supported by a memorandum opinion, the district court granted respondents' motion to dismiss and denied the petition for a writ of habeas corpus. Petitioner's "Petition for Rehearing," in which he cited several district court due process cases, was denied by the court by an order dated March 12, 1975.

Petitioner filed a timely notice of appeal. Several briefs were filed in this court: (1) petitioner's *pro se* brief in which he repeated his due-process-requires-reasons argument presented to the district court but also purported to broaden the scope of the inquiry to include issues as to the right to hearing, right to counsel, examination of his parole file, and the right to rehabilitation; (2) respondents' brief, responding only to the due process argument; (3) petitioner's motion to dismiss appeal and memorandum in support raising new issues of improper delegation of state power, violation of separation of powers provision of the Illinois Constitution and unconstitutional extending of sentence; (4) respondents' answer to motion to dismiss; and (5) petitioner's reply.

Petitioner was not represented by counsel but this court permitted amicus curiae briefs to be filed on petitioner's behalf by the Prisoners Legal Assistance and the American Civil Liberties Union. Both of these excellent briefs centered on the issues properly before us: (1) does due process require the giving of reasons for denial of state parole release and (2) does the Illinois statute requiring the stating of certain reasons satisfy due process?

## II

In *King v. United States*, 492 F.2d 1337 (7th Cir. 1974), we held that the provision of the Administrative Procedure Act which requires that prompt notice be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceedings, 5 U.S.C. § 555(e), was applicable to federal parole release hearings and that such provision required that a brief statement of the reasons for denial be given to the applicant for parole.[1]

1. *King* was followed by the Tenth Circuit in *Mower v. Britton*, 504 F.2d 396, 397 (10th Cir. 1974). *See also Snyder v. United States Board of Parole*, 383 F.Supp. 1153 (D.Colo.1974) and *Reed v. United States*, 388 F.Supp. 725 (D.Kan.1975). *King* was also followed in *Mitchell v. Sigler*, 389 F.Supp. 1012 (N.D.Ga. 1975), and in the concurring opinion of Judge

Leventhal in *Childs v. United States Board of Parole*, 167 U.S.App.D.C. 268, 511 F.2d 1270, 1286 (1974). *See also Beard v. Johnston*, 391 F.Supp. 748 (E.D.Ill.1975).

Two Pennsylvania district courts, absent a post-*Morrissey* opinion on the subject by the Third Circuit, proceeded on an *arguendo* basis that a denial of parole requires reasons be

Although, in view of our conclusion that the Administrative Procedure Act applied and required a statement of reasons for denying parole, we did not reach the question of whether due process required the giving of reasons, we said in *King* at 1343:

[A] substantial argument can be made that some modicum of due process should attend the denial of the expectation of conditional freedom on parole inasmuch as its termination after having been granted inflicts a "grievous loss" of a "valuable liberty" (*Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

Inasmuch as the Administrative Procedure Act applies only to federal parole release procedures, subsequent courts dealing with state prisoners were squarely presented with the due process argument. The Second Circuit held in *United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 500 F.2d 925 (2d Cir.), *vacated as moot*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), that due process requires that a state prisoner who has been denied parole be given a statement of reasons.

Without defining the effect of its application, the Fourth Circuit applied the due process clause to the conduct of state parole proceedings in *Bradford v. Weinstein*, 519 F.2d 728 (4th Cir. 1974), *cert. granted*, 421 U.S. 998, 95 S.Ct. 2394, 44 L.Ed.2d 664 (1975).[2]

Since *King* was decided, the Supreme Court decided *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), dealing with the rights of state prisoners charged with serious misconduct which could lead to the forfeiture of good-time credits. Mr. Justice White

said for the Court at 557 and 558, 94 S.Ct. at 2975:

But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those *minimum procedures* appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

\*   \*   \*   \*   \*   \*

Since prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the *minimum requirements of procedural due process* appropriate for the circumstances must be observed. (Emphasis added.)

The Court found that "the deprivation of good time is not the same immediate disaster that the revocation of parole is for the parolee . . . militating against adopting the full range of procedures suggested by *Morrissey* for alleged parole violators . . .." *Id.* at 561, 94 S.Ct. at 2977.

The Court then concluded at 563, 94 S.Ct. at 2978:

Two of the [*Morrissey*] procedures that the Court held should be extended to parolees facing revocation proceedings are not, but must be, provided to prisoners in the Nebraska Complex if the *minimum requirements of procedural due process are to be satisfied.* These are advance written no-

---

given and noted the requirements of the Administrative Procedure Act, 5 U.S.C. § 555(e). *United States ex rel. Harrison v. Pace*, 380 F.Supp. 107, 110 (E.D.Pa.1974), and *deVyver v. Warden*, 388 F.Supp. 1213, 1220 (M.D.Pa. 1974).

In *Pickus v. United States Board of Parole*, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974), the District of Columbia Circuit held that the United States Board of Parole is an "agency"

under the Administrative Procedure Act and subject to the requirement that its rulemaking be attended by advance public notice and opportunity for interested persons to participate through submissions of data or opinion. 5 U.S.C. § 553.

2. Followed in *Franklin v. Shields*, 399 F.Supp. 309 (W.D.Va.1975).

tice of the claimed violation and a written statement of the factfindings as to the evidence relied upon and the reasons for the disciplinary action taken. (Emphasis added.) [3]

The District of Columbia Circuit has held that due process also applies to federal parole release procedures and requires that federal prisoners be given a written statement of reasons for denial of parole. *Childs v. United States Board of Parole*, 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974).[4] Judge Fahy said for the court at 1280:

> Just as the [Supreme] Court found in *Wolff* that the State, having created the valuable right to good time, must act according to constitutional safeguards when it withdraws the right, so here, where the federal government has made parole an integral part of the penological system, I believe it is also essential that authority to deny parole not be arbitrarily exercised.[5]

■ We conclude that due process includes as a minimum requirement that reasons be given for the denial of parole release.

### III

The Illinois Unified Code of Corrections, effective January 1, 1973, provides that the Parole and Pardon Board in the Illinois Department of Corrections

> . . . shall not parole a person eligible for parole if it determines that:

(1) there is a substantial risk that he will not conform to reasonable conditions of parole; or

(2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or

(3) his release would have a substantially adverse effect on institutional discipline.

Ill.Rev.Stats. ch. 38, § 1003–3–5(c).

The Code of Corrections further provides in Section 1003–3–5(f) that:

> The. Board shall render its decision within a reasonable time after hearing and *shall state the basis therefor both in the records of the Board and in written notice to the person on whose application it has acted.* In its decision, the Board shall set the person's release date, or if it denies parole it shall provide for a rehearing not more than 12 months from the date of denial. (Emphasis added.)

Part of the legislative history of the Code consists of the commentaries of the council which drafted the Code. The "Council Commentary" following Section 1003–3–5 reads in part as follows:

> The Board should state one or more of the reasons listed in subparagraph (c) as the basis for its decision denying parole as required by subparagraph (f). Additional reasons may also be stated.

In this case parole was denied to the petitioner on December 19, 1974, the question of parole was continued to the

---

**3.** For law review commentaries discussing the necessity of reasons for parole denial as being required by due process, see *Project: Parole Release Decisionmaking and the Sentencing Process*, 84 Yale L.J. 810–902 (1975); Comment, *The Necessity for Written Reasons for Parole Denial: Two Approaches*, 44 Cinc.L. Rev. 115–23 (1975); Comment, *Applying the Administrative Procedure Act to Federal Parole Decision Making*, 6 St. Mary's L.J. 478–94 (1974); *Recent Developments: Parole Release—Federal Circuits Conflict on Applicability of Due Process and Administrative Procedure Act to Parole Release Decisions*, 27 Vand. L.Rev. 1257–77 (1974).

**4.** *See also Soloway v. Weger*, 389 F.Supp. 409 (M.D.Pa.1974); *Cooley v. Sigler*, 381 F.Supp. 441 (D.Minn.1974); *Craft v. Attorney General of the United States*, 379 F.Supp. 538 (M.D.Pa. 1974); *Candarini v. Attorney General of the United States*, 369 F.Supp. 1132 (E.D.N.Y. 1974).

**5.** Similarly, in *Craft v. Attorney General of the United States*, 379 F.Supp. 538, 539 (M.D.Pa. 1974), the court in analyzing *Wolff* said:

> [I]f a prisoner's right to good time is sufficiently embraced within the concept of "liberty," then his interest in the granting or denying of parole is *a fortiori* covered by that concept.

December 1975 docket and "the Board gave the following in explanation of their decision," all in strict accord with the Code of Corrections:

It is the opinion of the Board that an early parole on this offense where police officers were wounded while doing their duty, would deprecate the seriousness of such an offense and would not deter others from committing such crimes. The Board recognizes your excellent institutional adjustment and well conceived parole plans and recommends that you continue in your excellent adjustment in the institution.

The problem of this appeal is whether these reasons are sufficient to satisfy the minimum requirements of due process.

Inasmuch as most of the authority upon which we must rely in seeking an answer is found in decisions interpreting federal law, we begin with the federal statute authorizing the release of a federal prisoner on parole, 18 U.S.C. § 4203(a):

If it appears to the Board of Parole from a report by the proper institutional officers or upon application by a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole.

The Rules of the United States Board of Parole provide in part as follows, Section 2.13, 40 Fed.Reg. 41332 (1975):

(a) . . . At the conclusion of the hearing, the examiner panel shall inform the prisoner of its tentative decision, and, if parole is denied, of the reasons therefor.

(b) In accordance with § 2.18 [6] the reasons for parole denial may include, but are not limited to, the following reasons, with further specification where appropriate:

(1) Release at this time would depreciate the seriousness of the offense committed and would thus be incompatible with the welfare of society.

(2) There does not appear to be a reasonable probability at this time that the prisoner would live and remain at liberty without violating the law.

(3) The prisoner has (a serious) (repeated) disciplinary infraction(s) in the institution.

(4) Additional institutional treatment is required to enhance the prisoner's capacity to lead a law-abiding life.

(c) In lieu of or in combination with the reasons in paragraph (b)(1) and (2) of this section the prisoner after initial hearings shall be furnished a guideline evaluation statement which includes the prisoner's salient factor score and offense severity rating as described in § 2.20, as well as the reasons for a decision to continue the prisoner for a period outside the range indicated by the guidelines.

(d) Written notification of the decision . . . shall be mailed or transmitted to the prisoner within fifteen working days of the date of the hearing except in emergencies. If parole is denied, the prisoner shall also receive in writing as a part of the decision, the reasons therefor.

Thus, under Illinois law the Illinois Parole and Pardon Board shall not parole a person if "his release . . . would deprecate the seriousness of his offense or promote disrespect for the law" and

---

6. United States Board of Parole Rule § 2.18, 40 Fed.Reg. 41333 (1975), provides:

The granting of parole rests in the discretion of the Board of Parole. The Board may parole a prisoner who is otherwise eligible if (a) in the opinion of the Board such release is not incompatible with the welfare of society; (b) he has observed substantially the rules of the institution in which he is confined; and (c) there is a reasonable probability that he will live and remain at liberty without violating the laws (18 U.S.C. 4203(a)).

under federal parole rules the reasons for parole denial may include that "release · . . . would depreciate the seriousness of the offense committed and would thus be incompatible with the welfare of society."

Whereas Illinois seeks to avoid deprecating the seriousness of the offense, the federal Parole Board seeks to avoid depreciating the seriousness of the offense. In the sense used, "deprecate" and "depreciate" have come to be synonymous.[7]

A great many district courts have considered the adequacy of the reason that "release at this time would depreciate the seriousness of the offense" when given by the United States Board of Parole.

In *Billiteri v. United States Board of Parole*, 385 F.Supp. 1217 (W.D.N.Y.1974), the Parole Board erroneously believed that the prisoner had been convicted of extortion whereas the conviction was for conspiracy only. When the Board referred to the "seriousness" of the offense, meaning extortion, the prisoner was clearly deprived of due process and the "boiler plate" reason served to conceal the Board's error. In the present case the State Board described the offense as "where police officers were wounded while doing their duty." Petitioner has not denied that this is the offense for which he was convicted.

*Lupo v. Norton*, 371 F.Supp. 156 (D.Conn.1974); *Grasso v. Norton*, 371 F.Supp. 171 (D.Conn.1974) and *Diaz v. Norton*, 376 F.Supp. 112 (D.Conn.1974), were all decided on the ground that the United States Board of Parole had failed to follow its own rules and guidelines, which rely upon offense severity ratings and salient factor scores. *Lupo* additionally involved the "use of the guideline table based on [an] alleged offense rather than the convicted offense and the adequacy of the reason given for denying parole in these circumstances." 371

F.Supp. at 159. *Grasso* and *Diaz* additionally involved a calculable departure from the federal guidelines. The court, which was the same in all three cases, held that additional reasons were needed to explain the guideline departures.

The same judge held in *Battle v. Norton*, 365 F.Supp. 925, 929 (D.Conn.1973), that "[w]hether the seriousness of the offense could properly be a basis for parole denial exclusive of all other factors . . . is a question that need not be decided in this case" inasmuch as a submitted affidavit demonstrated "that the Board's present system involves consideration of additional factors" and it appeared that the federal Board followed its own guidelines.

Since there is no questioning in the present case of the fact that the Illinois Board followed the guidelines set down by the Illinois Legislature, none of the foregoing cases is of any assistance. Of greater significance are those federal district court opinions which base the requirement for reasons upon due process.

In *Soloway v. Weger*, 389 F.Supp. 409, 411 (M.D.Pa.1974), the court asked whether the "seriousness of the offense" means (1) "that the statutory offense itself is so serious that parole must be denied regardless of the facts of each case and an inmate's participation in it?" or (2) "that the circumstances of petitioner's particular offense and his involvement in it were so serious that his release would appear to diminish his culpability or depreciate the seriousness of *this* offense?" (Emphasis added.) In *Soloway* the court could not determine whether "seriousness of the offense" had the first or second meaning. Since it could have had the first meaning, the court ordered the Parole Board to provide a more "meaningful statement of reasons." However, the court said that if "seriousness" had the second meaning, "then the Court would not attempt to

---

7. "Deprecate" means to pray against, to seek to avert, to disapprove; "depreciate" means to lessen in estimated value or to represent as of little value; however, the meaning of "depre-

cate" has been influenced by the meaning of "depreciate." *Webster's New International Dictionary* (3d ed. 1966).

second-guess that conclusion." In the present case, the second meaning is clearly attached when the Parole Board refers to "police officers" " . . . wounded while doing their duty."

Both *Candarini v. Attorney General of the United States*, 369 F.Supp. 1132 (E.D.N.Y.1974) and *Craft v. Attorney General of the United States*, 379 F.Supp. 538 (M.D.Pa.1974), relied upon due process for requiring reasons. The sole reason given by the federal Parole Board in each of these cases was depreciation of the seriousness of the crime. In response to this, the court said in *Candarini* that "[m]ere pro forma language . . . will not suffice" (p. 1137) and in *Craft* that the reason given "was tantamount to no reason and afforded the Petitioner none of the safeguards . . . .." (p. 540).

Here the state prisoner was given two additional facts beyond the seriousness of the offense and the deterrence of others. First, he was told, as we have noted, that it was the seriousness of *his* commission of the particular crime, not the seriousness of attempted murder generally which was delaying his parole. He was also told to continue his "excellent institutional adjustment and well conceived parole plans." Then in accordance with the Illinois Code of Corrections, his parole consideration was continued for twelve months. The recommendation that he keep up his good work of rehabilitation should have encouraged him to continue with the realistic hope that in twelve months his chances of parole would substantially increase. Thus, Richerson was not in the same position as Candarini or Craft.

In *Wiley v. United States Board of Parole*, 380 F.Supp. 1194 (M.D.Pa.1974), in denying a petition for a writ of habeas corpus, the court said:

The seriousness of the offense and the effect parole of an offender may have on deterrence of criminal conduct, embodied in the "depreciating the seriousness of the offense" reason given by the Board for denial of parole, clearly are a proper basis for denying parole since these factors are relevant to and can be determinative of the question of whether the offender's release is compatible with the welfare of society . . ..

*Id.* at 1197.

The court, however, does reject the contention that, in addition to reasons, a prisoner is constitutionally entitled to a detailed written statement of the information utilized by the Board in reaching its decision. Due process does not require that the Board undertake this administrative burden.

*Id.* at 1201.

In *deVyver v. Warden*, 388 F.Supp. 1213 (M.D.Pa.1974), the court said at 1220:

In the instant case the Parole Board did not rely solely on the "depreciating the seriousness of the offense" reason for denying parole and continuing petitioner's confinement to February 1975. In addition, the Board expressed the view that because of petitioner's serious past criminal pattern, there was not a reasonable probability that he would remain at liberty without violating the law and, moreover, he was in need of additional institutional treatment, specifically in the area of counseling, to enhance his ability to lead a law abiding life. These reasons are adequate to support continued confinement not only within but beyond the maximum table guideline period.

In *Franklin v. Shields*, 399 F.Supp. 309, 318–19 (W.D.Va.1975), involving state prisoners in Virginia, the court said:

[T]he court concludes that a statement of reasons for parole denial should be given to inmates. Such reasons should be as clear and precise as possible, however, as a constitutional proposition such reasons need only be substantially related to the criteria adopted by the Board which have been found to be constitutionally requisite. For the most part the reasons given to

the named plaintiffs satisfy this requirement. The Board requires a large degree of discretion in exercising its judgment, and the court does not believe that a detailed narrative justifying the denial of parole is constitutionally required. The present procedure of supplying general reasons which are substantially related to the parole decision criteria and providing further explanation on request is constitutionally sufficient.

## IV

Inasmuch as the district court authority where the issue of the adequacy of reasons was squarely presented is not completely persuasive or dispositive, we must turn to analogous situations and consider some of the policies involved.

In *King v. United States*, 492 F.2d 1337 (7th Cir. 1974), we were persuaded to apply one provision of the Administrative Procedure Act, 5 U.S.C. § 555(e) to federal parole release procedures and that provision required only "a brief statement of the grounds for denial." We reached that conclusion after carefully considering the advantages and "pitfalls" in requiring reasons (pp. 1340–41, nn. 11 and 12). We quoted Professor Johnson's report on "Federal Parole Procedures" to the Administrative Conference of the United States, 25 Ad.L.Rev. 459, 485 (1973), wherein he said (p. 1341, n. 12):

> [T]he reasons must be reasonably specific. It does no good to tell a prisoner he is being denied parole because he is a danger to society unless he is told why he is so regarded, and whether there is anything he can do to convince the Board otherwise.

Here the statutorily mandated reason was given and in addition petitioner "is told why he is so regarded and whether there is anything he can do. . . . ." Although we now hold that due process requires that state prisoners be given reasons for parole release denial even as in *King* we held that the A.P.A. required that such reasons be given to federal prisoners, we believe that the measure of how much due process is required may very well be made by the A.P.A. standard of a "brief statement."

In *United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 500 F.2d 925 (2d Cir.), *vacated as moot*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), the court said at page 934:

> To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision . . . and the essential facts upon which the Board's inferences are based
> . . . . .

Under this test, the Illinois Board's statement of reasons furnished to the petitioner satisfied the minimum due process requirements and we so hold. We believe that this view is consistent with Mr. Justice White's analysis of the minimum requirements for revocation of a prisoner's good-time credit in *Wolff v. McDonnell*, 418 U.S. 539, 563–72, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), wherein the importance of each procedural requirement is considered in some detail but the need for reasons is simply stated without further amplification.

What the petitioner here seeks in effect is reasons explaining the reason already given. In *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), the Supreme Court held that under the Federal Youth Corrections Act a district court is required to expressly "find" that the offender would not benefit from treatment under the Act, but that the Act does not require that the "finding" be accompanied by supporting reasons. We have held that due process does not require sup-

porting reasons for the express finding that a youth offender would not benefit from treatment under the Act. *United States v. Dorszynski*, 524 F.2d 190 (7th Cir. 1975). The finding required by the two *Dorszynski* opinions is in fact a "reason" and it was held that no reasons need be given to explain that reason.

■ Minimum due process requirements are neither "an inflexible structure" (*Morrissey v. Brewer*, 408 U.S. at 490, 92 S.Ct. 2593 (Brennan, J., concurring)) nor "graven in stone" (*Wolff v. McDonnell*, 418 U.S. at 572, 94 S.Ct. 2963), but we conclude that the reasons given in this case were adequate. Inasmuch as the Illinois Board went beyond the bare statutory requirements, we need not speculate as to whether the statutory reasons standing alone would be sufficient.

Judgment affirmed.