Raymond SHOULTS, Petitioner,

v.

Ogis FIELDS, Respondent.

No. 79–C–97.

United States District Court,
W. D. Wisconsin.

May 6, 1981.

Lester Pines, Madison, Wis., for petitioner.

John Franke, Asst. U. S. Atty., Madison, Wis., for respondent.

## ORDER

CRABB, Chief Judge.

This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. Petitioner, an inmate at the Federal Correctional Institution at Oxford, Wisconsin, claims that his incarceration is being prolonged by the United States Parole Commission in violation of the laws and Constitution of the United States. He moves this court for a writ directing respondent to release him on parole.

Based upon a consideration of all of the materials submitted by the parties to this suit, I make the following findings of fact.

## FACTS

Following a plea of guilty, petitioner was convicted on March 25, 1974, of committing second-degree murder on a government reservation in violation of 18 U.S.C. § 111. On September 3, 1974, he was sentenced to a term not to exceed 30 years, pursuant to 18 U.S.C. § 4208(a)(2) (now § 4205(b)(2)), hereinafter referred to as § (b)(2). The significance of a § (b)(2) sentence is that a court proceeding under that section specifies only a *maximum* sentence of imprisonment, with the parole commission empowered to release the prisoner at any time. In sentencing petitioner, the trial judge stated:

[T]he addition of the [§ (b)(2) provision] will at least give the Board of Parole the opportunity, even before one-third of the sentence may be served, to consider the question as to whether or not this defendant can be released ... with a provision for outpatient psychotherapy, but this decision will have to be made in the future and I would expect the psychiatrist and the persons who will be in charge of him to make that decision.

Petitioner was given a parole hearing on January 12, 1978. At the time of that hearing, the parole commission had before it reports which indicated that from a mental health standpoint petitioner was completely rehabilitated, and that petitioner's educational and work-related accomplishments while in prison were outstanding and numerous. Petitioner's post-release plans were to live with his sister and brother-in-law in St. Louis and to pursue a medical degree. The parole hearing examiners agreed that petitioner's record was exemplary; they found that petitioner had made a "truly outstanding adjustment" and that he had "programmed as fully as he possibly could."

Petitioner was given a salient factor score of 10 and an offense severity rating of "Greatest." The applicable parole guidelines suggested that petitioner be incarcerated for a minimum of 36 months, and did not specify an upper limit; current guidelines suggest a minimum of 55 months. At the time of the parole hearing petitioner had served approximately 55 months. Nevertheless, the examiners concluded that "accountability has not yet been satisfied." One of the examiners recommended that petitioner be continued with a presumptive parole date of July 12, 1981; the other examiner recommended that no presumptive parole date be set and that petitioner be reconsidered for parole in four years.

The decision at the regional level was to "continue for a four year reconsideration hearing in January, 1982." The following reason was given for this decision:

Your offense behavior has been rated as Greatest severity because it involved a homicide. You have a salient factor score of 10. You have been in custody a total of 55 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 36 [plus] months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted.[1] It is however, found that your release at this time would depreciate the seriousness of your offense behavior and this is incompatible with the welfare of society. Commission guidelines for greatest severity cases do not specify a maximum limit. Therefore, a decision in your case has been based in part upon a comparison of the relative severity of your offense behavior with offense behaviors and time ranges specified in the very high severity category. As required by law, you have also been scheduled for a statutory interim hearing during January, 1980.

One of the regional commissioners who voted on petitioner's application for parole commented as follows:

A murder, is a murder, is a murder— whether the lover is male or female makes no difference. [A] life was taken. Electrocution is still legal. [T]his guy is lucky he was not in a state favoring this form of punishment. Personally, I do. [I] believe a long period of incarceration is in order to satisfy accountability.

## OPINION

■ Petitioner contends that with respect to a prisoner serving a § (b)(2) sentence, the parole commission may not deny

---

1. At the time he was considered for parole, petitioner had already served the minimum amount of time suggested by the guidelines. The reference to "a decision outside the guidelines" thus appears to be an error. However, petitioner does not argue here that the error is significant, and considered as a whole the statement of reasons does not suggest the commission actually believed petitioner to be below the guidelines at the time of his application for parole.

parole and order a four year continuance solely for the reason that "release at this time would depreciate the seriousness of [the] offense," when the prisoner already has been incarcerated for a term in excess of the minimum established by the open-ended parole guidelines, and when the prisoner is rehabilitated and his institutional adjustment has been outstanding. Specifically, petitioner claims that the parole commission acted arbitrarily in two respects: first, by failing to express with constitutionally sufficient specificity the reasons for its decision to deny him parole and continue his incarceration for an additional four years;[2] second, by giving as justification for the denial of parole, reasons which are substantively inadequate under constitutional and statutory law in that they reflect an exclusive focus on the single factor of offense severity.

Although I have some doubt about the propriety of evaluating the reasons given petitioner against a constitutional standard when it remains an open question whether a federal inmate enjoys such an expectancy of release on parole as to be entitled to some measure of due process, for the purpose of this opinion I am assuming that federal parole decisions must comply with the standards of due process established by the Supreme Court in *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).[3]

In *Greenholtz*, the Court held that the United States Constitution does not require the Nebraska parole authority to provide a summary of the evidence relied upon in making the parole determination. The Court did not specify what would constitute an adequate statement of reasons for denying parole; however, the Court of Appeals for the Seventh Circuit has addressed that issue in *United States ex rel. Richerson v. Wolff*, 525 F.2d 797 (7th Cir. 1975), *cert. denied*, 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976), where the court quoted with approval the following passage from *United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 500 F.2d 925, 934 (2d Cir.), *vacated as moot*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974):

> To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision ... and the essential facts upon which the Board's inferences are based.

*Id.* at 804.

### I.

Petitioner's first claim is that the statement of reasons provided by the parole

---

**2.** While petitioner does not characterize this first claim as constitutional in nature, I reach the conclusion that it is from the fact that he does not refer to any statute or regulation as the basis for his challenge to the specificity of the reasons given in support of the parole commission's action. Clearly, petitioner has no statutory right of review under the Administrative Procedure Act (APA). 18 U.S.C. § 4218(d) commits to agency discretion the decision to grant or deny parole, thereby insulating the commission from the normal procedures for judicial review of agency actions. *Luther v. Molina*, 627 F.2d 71, 75 (7th Cir. 1980). In any event, if his challenge to the specificity of the reasons were considered to be based on an alleged violation of 18 U.S.C. § 4206, the standard of analysis would be the same as the one employed in evaluating the constitutional challenge.

**3.** In *Greenholtz*, the Court ruled that "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence;" and that if such a right exists, it must have its source in the applicable parole statutes and regulations. *Id.*, at 12, 99 S.Ct. at 2106. A majority of the Court found that the "unique structure and language" of the Nebraska parole statute provided an expectation of parole sufficient to create a liberty interest entitled to some measure of constitutional protection.

The Court has not yet addressed the question of whether the federal parole statutes and regulations create a similar expectation of parole. *Shahid v. Crawford*, 599 F.2d 666 (5th Cir. 1979).

commission is insufficiently specific. According to *Richerson*, 525 F.2d 797, in order to comport with due process requirements (assuming them to be applicable) a statement of reasons need only specify "the grounds for the decision ... and the essential facts upon which the Board's inferences are based." *Richerson*, 525 F.2d at 804. Here, the statement specifies both: the stated grounds for the decision are that release would depreciate the seriousness of the offense and that this would be incompatible with the welfare of society; the stated essential fact upon which this conclusion is based is petitioner's offense behavior, homicide. From the brief statement it can be ascertained that petitioner was denied parole because the commission believed his release would have an inappropriate symbolic effect given the serious nature of his offense. Whether this reason is *substantively* sufficient is a question which will be considered in Part II, below. At this point in the analysis it is enough to note that the statement is sufficiently specific to permit a determination whether parole was denied "for an impermissible reason or for no reason at all." *Richerson*, 525 F.2d at 804.

Petitioner attaches great significance to the fact that because of the severity of his offense he has been placed into a category ("Greatest" severity) for which the guidelines established by the parole commission specify only a minimum term of confinement. He suggests that for those prisoners in this "open-ended" guideline category who already have served the suggested minimum term, a decision by the commission to deny parole cannot be justified by reference to the guidelines. Petitioner's argument on this point fails for two reasons.

First, it is inaccurate to characterize the guidelines as being open-ended with respect to petitioner's offense severity category merely because no maximum is expressly established. There is a maximum term given implicit recognition by the parole commission in all such cases, and that is incarceration until expiration of the sentence imposed by the judge. Thus, as for prisoners who have not yet served the maximum term prescribed by the other, "closed"

guideline categories, reference to the guidelines does provide support for the commission's decision in petitioner's case; the reasoning that went into the establishment of the guidelines is imported into his particular denial of parole.

Second, petitioner's argument fails because in his case the parole commission did not merely cite the guidelines in support of its decision. Rather, it stated as its reason that release would depreciate the seriousness of the offense and would be incompatible with the welfare of society. In sum, since this statement of reasons meets the test established in *Richerson*, it is inconsequential that petitioner falls into a guideline category which lacks an expressed maximum term.

In addition to challenging the specificity of the statement of reasons with respect to the denial of parole, petitioner contends that the statement is inadequate in that it fails to specify the grounds for the four year continuance. He bases this argument on the language of the statement— "your release *at this time* would depreciate the seriousness of your offense" (emphasis added)—and on the earlier decision of this court, *Bowman v. United States Bd. of Parole*, 411 F.Supp. 329 (W.D.Wis.1976). In that opinion, the Honorable James E. Doyle held that a statement such as the one petitioner was given was insufficient because, among other failings, the statement "speaks only to 'release at this time,' and does not illuminate the selection of the maximum continuance." *Id.* at 330. Recognizing that with respect to this particular claim the present case is on all fours with *Bowman*, I nevertheless respectfully decline to utilize the *Bowman* approach here. What is at issue is the parole commission's choice of language. Examining the commission's decision to deny petitioner parole together with its statement of reasons as a whole, and without emphasizing unduly the words "at this time," I construe the statement to express the commission's judgment that release at any time prior to January, 1982, would depreciate the seriousness of petitioner's offense.

## II.

Petitioner's second set of claims concern the substantive adequacy of the reasons stated in support of the parole commission's decision.

Petitioner's first argument is that the statement of reasons indicates that the parole commission utilized the wrong criterion in evaluating his suitability for parole. Essentially, this argument is as follows: in sentencing a defendant pursuant to § (b)(2) a judge expresses the belief that, by itself, the nature of the crime does not require that a minimum amount of time be served; a § (b)(2) sentence thus reflects the judge's expectation that institutional conduct and rehabilitation will be major determinants of future parole commission decisions; in violation of this expectation, the parole commission denied petitioner parole solely on the basis of the nature of his crime. Petitioner concludes:

> The sentencing court decided that "accountability" was secondary to rehabilitation and relieved the commission from consideration of that factor. The commission's insistence on doing so interferes with the § 4205(b)(2) sentence and is therefore illegal. It is outside of the authority of the commission as circumscribed by § 4205(b)(2) in relation to § 4206.

[Memorandum in Support of Petition for Writ of Habeas Corpus, p. 13]

■ Contrary to petitioner's contentions, a sentencing judge bounds the discretion of the parole commission only by establishing the outer limits of the period during which the prisoner may be incarcerated. The sentencing judge's expectations regarding when and by what criteria the prisoner will be considered for parole do not bind the parole commission in any way. The Supreme Court has described the distinct powers of the courts and the parole commission as follows:

> The decision as to when a lawfully sentenced defendant shall actually be released has been committed by Congress, with certain limitations, to the discretion of the Parole Commission. Whether wisely or not, Congress has decided that the Commission is in the best position to determine when release is appropriate, and in doing so, to moderate the disparities in the sentencing practices of individual judges. The authority of sentencing judges to select precise release dates is, by contrast, narrowly limited: the judge may select an early parole eligibility date, but that guarantees only that the defendant will be considered at that time by the Parole Commission....
>
> The import of this statutory scheme is clear: the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met. To require the Parole Commission to act in accordance with judicial expectations...would substantially undermine the congressional decision to entrust release determinations to the Commission and not the courts.

*United States v. Addonizio,* 442 U.S. 178, 188–190, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979) (footnotes omitted).

■ Thus, while it appears that institutional behavior must be considered in connection with an application for parole, the parole commission has discretion with respect to the relative weight to be accorded this and other factors, the expectations of the sentencing judge notwithstanding. *Wilden v. Fields,* 510 F.Supp. 1295 (W.D. Wis.1981). Here, petitioner does not argue that the commission failed to consider his record of institutional conduct; to the contrary, he alleges, and I have found, that the commission had before it his complete record, characterized by the hearing examiners as exemplary and outstanding. It is not impermissible for the commission to deny a prisoner parole in spite of an impressive institutional record.

■ Petitioner argues that the commission not only undervalued his favorable rec-

ord of institutional conduct and rehabilitation, but that it improperly premised its decision solely upon the nature of his offense. In the discussion in Part I, above, I have construed the parole commission's statement of reasons to indicate that petitioner was denied parole because the commission believed that his offense was so severe that release would have an inappropriate symbolic effect on society. There is nothing impermissible about denying parole for this reason; general deterence is a legitimate goal of sentencing, and it is proper for the parole commission to base parole decisions on similar considerations. Whether release on parole would depreciate the seriousness of the offense is one of the factors which the commission is mandated to consider in connection with an application for parole. 18 U.S.C. § 4206(a)(1). Accordingly, the United States Court of Appeals for this circuit has held that the nature of the offense properly may be the basis for a denial of parole. *Garcia v. United States Board of Parole*, 557 F.2d 100 (7th Cir. 1977).

Petitioner attempts to distinguish his case from *Garcia* on the ground that he is serving a § (b)(2) sentence. There is nothing in the parole statutes nor in the legislative history of those statutes to suggest that the parole commission must accord different treatment to § (b)(2) prisoners. *Wilden v. Fields*, 510 F.Supp. 1295 (W.D.Wis. 1981).

Petitioner's attempt to distinguish his case from *Garcia* on the ground that Garcia had not yet served the minimum amount of time recommended by the guidelines fails also. It may be true that something less in the way of explanation for denial of parole will suffice when a prisoner is below the guideline minimum. For such a prisoner, reference to the guidelines alone may be adequate to satisfy the test of *Richerson*,

525 F.2d 797, while such a reference might not be adequate for petitioner.[4] Here, however, the commission did not justify its decision solely with reference to the guidelines; it additionally informed petitioner that release at any time prior to January, 1982, would depreciate the seriousness of his offense (homicide) and would be incompatible with the welfare of society. As explained in Part I above, the statement is sufficiently informative to satisfy the test of *Richerson*; under *Garcia* it also is substantively sufficient.

▮ Having found that offense severity is an adequate justification for the commission's decision, I conclude that there is no merit to petitioner's complaint regarding the unofficial comment by one of the regional commissioners that "a murder, is a murder, is a murder...." However ineloquent or crude that comment might be, it does not render impermissible a consideration (offense severity) which is otherwise a legitimate basis for a denial of parole.

Finally, petitioner argues that even if the statement of reasons is substantively adequate to justify the denial of parole, it is not adequate to justify the four year continuance. This argument is supported by *Bowman v. United States Bd. of Parole*, 411 F.Supp. 329 (W.D.Wis.1976). However, to the extent that *Bowman* stands for this proposition, I decline to follow it. As I stated in *Wilden v. Fields*, 510 F.Supp. 1295 at 1311 (W.D.Wis.1981), I am of the belief that "nothing requires the commission to distinguish between parole denial and length of continuance when it explains its decisions." The court of appeals for this circuit has stated that arbitrariness may be suspected when the commission orders a lengthy continuance, requiring a prisoner to be incarcerated for a substantially greater amount of time than that recommended by

---

4. A similar attempt to distinguish *Garcia* was rejected in another recent opinion by this court. *Wilden v. Fields*, 510 F.Supp. 1295 (W.D.Wis. 1981). This discussion of *Garcia* in footnote 13, page 1311, of that opinion was not intended to suggest that a statement of reasons that is adequate for a prisoner who is below the guideline minimum will always suffice for one who is above the minimum.

the guidelines. *Cox v. Benson*, 548 F.2d 186 (7th Cir. 1977). However, in *Cox* there existed other circumstances suggestive of arbitrariness not present in this case: the commission had failed to follow normal procedures set out in administrative regulations, and it based its decision on a fact disputed by Cox without affording Cox an evidentiary hearing. In the instant case, there are no such indicators of arbitrariness.

■ I find nothing improper about the commission's deciding, at a time when petitioner had served four and one-half years of a thirty year sentence, that the severity of petitioner's offense required him to spend a minimum of four additional years in prison. Given the apparent view of the commission that at least eight and one-half years should be served because of the nature of petitioner's crime, and the fact that the commission has the statutory authority to require petitioner to serve that amount of time, it would be senseless to hold that the commission acted arbitrarily when it ordered the four year continuance. Moreover, there would be no gain to petitioner in so holding; to the contrary, it would seem to be in his interest that the commission be forthright about its intentions, rather than alternately raising and dashing his hopes.

## ORDER

For the foregoing reasons, IT IS ORDERED that this petition for a writ of habeas corpus is DISMISSED.